BOARD OF EDUCATION OF THE TOWN AND
BOROUGH OF NAUGATUCK *v.* TOWN AND
BOROUGH OF NAUGATUCK ET AL.
(AC 18902)

Lavery, C. J., and Schaller and Spear, Js.

Argued February 20—officially released June 11, 2002

*N. Warren Hess III*, for the appellants (defendants).

*Mark J. Sommaruga*, with whom, on the brief, was *Thomas N. Sullivan*, for the appellee (plaintiff).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Joan G. Libby* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

*Opinion*

LAVERY, C. J. The defendants[1] in this declaratory judgment action appeal from the trial court's rendering of summary judgment in favor of the plaintiff, the board of education of the town and borough of Naugatuck (board of education), following the court's determination that two recent amendments to the borough's municipal charter were invalid. The defendants claim that the court's rendering of summary judgment in favor of the plaintiff was improper because (1) the charter amendment providing for separate referenda on the borough's education budget and operating budget (budget amendment) is authorized by the General Statutes and is otherwise lawful and (2) the charter amendment providing that the mayor-elect shall be a member of the board of education (membership amendment) is authorized by the General Statutes and not precluded by the common-law doctrine of incompatible offices.

---

[1] The defendants are the town and borough of Naugatuck (borough); the board of mayor and burgesses of the borough (board of mayor and burgesses); William C. Rado, the former mayor of the borough; Timothy D. Barth, the current mayor of the borough; Sophie K. Morton, town clerk; Judy Crosswait, borough clerk; and Ann Hildreth and Jane II. Pronovost, registrars of voters.

We affirm the portion of the trial court's judgment concluding that the budget amendment is invalid and reverse the portion concluding that the membership amendment is invalid.[2]

The facts underlying this case are not in dispute. The case was presented to the court as a series of stipulations accompanied by cross motions for summary judgment. The stipulated facts included the following. The plaintiff is a board of education established and organized under state law. See General Statutes § 10-218 et seq.; General Statutes §§ 9-203 to 9-206a. Pursuant to General Statutes § 10-220, the plaintiff is vested with the responsibility of implementing the educational policies of the state in the borough's public schools. The defendants are a consolidated municipality; General Statutes §§ 7-148 (a), 7-187 (d); and various members of its government. See footnote 1. The board of mayor and burgesses is the borough's legislative body. General Statutes § 7-193 (a) (1).

The borough operates under a charter that is its organic law. Section 3.18 of the charter prescribes the number of members of the board of education and the length of their terms. Prior to November, 1996, that section provided for nine elected members to serve six year terms. Section 14 of the charter sets forth the process by which the borough's electors can seek a referendum on a proposed borough budget. Prior to November, 1996, that section provided for a referendum on the budget as a whole. In November, 1996, the defen-

---

[2] We note that when this appeal initially was brought, we dismissed the case as moot because the amendments at issue had been superceded by later though similar ones, proposed and passed so as to cure procedural defects surrounding the first amendment process. *Board of Education* v. *Naugatuck*, 58 Conn. App. 632, 638, 755 A.2d 297 (2000), rev'd, 257 Conn. 409, 778 A.2d 862 (2001). Thereafter, our Supreme Court reversed this court's determination of mootness and remanded the case for further proceedings. *Board of Education* v. *Naugatuck*, 257 Conn. 409, 778 A.2d 862 (2001).

dants submitted to borough electors two proposed amendments to the charter. The first proposal was to amend § 3.18 "to provide for a nine member Board of Education, *one of whose members shall be the Mayor* . . . effective at the May 1997 election." (Emphasis added.) The second proposal was to amend § 14 "to allow up to (3) three *separate budget referendums for both the Town Operating Budget and the Board of Education Budget.*" (Emphasis added.) The borough's electors approved both proposals by substantial margins.[3]

The plaintiff thereafter commenced this action seeking to have both charter amendments declared invalid and void ab initio. The plaintiff alleged that the amendments affected its responsibility pursuant to § 10-220 to manage the public schools. It claimed that the amendments improperly altered the composition of the board of education by placing thereon a member who was not elected, namely, the mayor, and impaired the board's ability to obtain a budget appropriate to meet minimum educational requirements.[4]

Subsequently, the parties filed a stipulation of facts with the court and, because the issues in the case presented only questions of law, each moved for summary judgment. See Practice Book § 17-49. The court, after considering the arguments presented by the parties, concluded that the budget amendment conflicted with § 10-220 and other general laws furthering the statewide interest in education and, therefore, was invalid. It also concluded that the membership amendment was invalid because the offices of mayor and board of education

[3] The budget amendment proposal received 5130 yes votes and 2450 no votes. The membership amendment proposal received 4352 yes votes and 3203 no votes.

[4] The plaintiff also alleged that the defendants failed to follow the statutorily mandated procedures for amending the charter. That claim subsequently was withdrawn.

member were inherently incompatible. Accordingly, the court rendered summary judgment in favor of the plaintiff. Additional facts will be set forth where necessary.

"Our standard of review of a trial court's granting of summary judgment is well established. Pursuant to Practice Book § 17-49, summary judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Mytych* v. *May Dept. Stores Co.*, 260 Conn. 152, 158–59, 793 A.2d 1068 (2002). Because the parties in this case stipulated to the facts, the only issues before the court were those of statutory interpretation, questions of law for which our review is plenary. *State* v. *Russo*, 259 Conn. 436, 447, 790 A.2d 1132 (2002).

"Our resolution of [these claims] is governed by well established principles. [I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id., 447–48.

We also proceed mindful of and sensitive to the fact that the charter revisions represent the popular will of the Naugatuck electorate, thus implicating the political and legislative process. *Board of Education* v. *Naugatuck*, supra, 257 Conn. 425. We recognize further the legislative purpose and rationale behind Connecticut's Home Rule Act, General Statutes §§ 7-187 to 7-201, which provides the parameters within which the borough may govern its affairs. "The rationale of the act,

simply stated, is that issues of local concern are most logically answered locally, pursuant to a home rule charter, exclusive of the provisions of the General Statutes. . . . Moreover, home rule legislation was enacted to enable municipalities to conduct their own business and control their own affairs to the fullest possible extent in their own way . . . upon the principle that the municipality itself knew better what it wanted and needed than did the state at large, and to give that municipality the exclusive privilege and right to enact direct legislation which would carry out and satisfy its wants and needs." (Citation omitted; internal quotation marks omitted.) *Caulfield* v. *Noble*, 178 Conn. 81, 86–87, 420 A.2d 1160 (1979).

Nonetheless, "it has been held that when a charter provision and a statute of general application both enter a field of statewide concern, the local charter power must yield to the superior power of the state." Id., 86 n.3. "[A] general law, in order to prevail over a conflicting charter provision of a city having a home rule charter, must pertain to those things of general concern to the people of the state, and it cannot deprive cities of the right to legislate on purely local affairs germane to city purposes." Id., 87; see also General Statutes 7-188.[5] With these principles in mind, we address the issues on appeal.

## I

The defendants claim that the court's rendering of summary judgment in favor of the plaintiff was

---

[5] General Statutes § 7-188 (a) provides in relevant part: "Any municipality, in addition to such powers as it has under the provisions of the general statutes or any special act, shall have the power to (1) adopt and amend a charter which shall be its organic law and shall supercede any existing charter . . . which charter or amended charter may include the provisions of any special act concerning the municipality *but which shall not otherwise be inconsistent with the constitution or general statutes* . . . ." (Emphasis added.)

improper because the budget amendment is authorized by the General Statutes and is otherwise lawful. We disagree.

The trial court described the change resulting from the budget amendment as follows. "Both before and after the amendment, § 14 set forth the procedure by which the board of finance and the board of mayor and burgesses adopt a budget for the town, including the holding of a public hearing on the budget as recommended by the boards, its publication in a newspaper prior to the public hearing and a procedure for the voters to petition for a referendum on the budget. The significant change effected by the November, 1996 amendment was to permit the electors to petition for separate votes on the town's 'operating budget' (the 'non-board of education budget') and/or the board of education budget. Under the charter, prior to the amendment the electors could vote only on the town's budget as a unit, including the board's budget. [After the amendment,] the electors can petition for a vote separately on each of the two budgets, the 'operating budget' and the board's budget, or on only one of them. Obviously, the electors can, therefore, reject both budgets or reject only one of them, e.g., the board's budget, while leaving the other budget intact.

"In language retained without amendment, § 14 provides that if 'the total votes to reject exceeds the vote[s] to accept, the budget shall be deemed rejected.' The board of finance and the board of mayor and burgesses must then present a 'revised budget' at a public hearing and adopt such a revised budget within fourteen days from the date of the referendum in which 'the budget' was rejected. A total of three such referenda may be held on either or both budgets."

The defendants argue that under the broad powers granted to municipalities by the Home Rule Act, the

budget amendment is valid. They claim that authority for a bifurcated referendum on the borough budget is found in General Statutes § 7-194, which grants municipalities the power "[t]o manage, regulate and control the finances and property . . . of the town"; in General Statutes § 7-148 (c) (2) (A) and (B), which, respectively, grant municipalities the power to "[e]stablish and maintain a budget system" and to "[a]ssess, levy and collect taxes for general or special purposes on all property, subjects or objects which may be lawfully taxed, and regulate the mode of assessment and collection of taxes and assessments not otherwise provided for"; and in decisional law such as *Caulfield* v. *Noble*, supra, 178 Conn. 81, that contemplates a broad grant of power to municipalities as to "matters of purely local concern, such as . . . local budgetary policy." *Shelton* v. *Commissioner*, 193 Conn. 506, 521, 479 A.2d 208 (1984), citing *Caulfield* v. *Noble*, supra, 90–91.

The plaintiff, on the other hand, argues that a split budget referendum is precluded by General Statutes § 7-344 and conflicts with the state's interest in public education. The plaintiff cites the constitution of Connecticut, article eight, § 1, and General Statutes §§ 10-220 and 10-222 in support of its position. Article eight, § 1, provides that there shall always be free public schools in Connecticut and that the General Assembly shall implement that principle through appropriate legislation. Section 10-220 (a) defines the duties of boards of education, in particular to "implement the educational interests of the state," and § 10-222 (a) describes the procedure by which boards of education shall submit their budget estimates to local budgeting authorities and provides that "[t]he money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education." The plaintiff argues that these constitutional and statutory provisions and the decisions inter-

preting them impose limitations on the borough's power to control the board of education's budget and that the budget amendment exceeds those limitations. We agree with the plaintiff.

Because the statutes cited by the defendants contain broad, general grants of taxing and budgeting powers to municipalities; General Statutes §§ 7-148 (c) (2) (A) and (B), 7-194; but the statute cited by the plaintiff specifically addresses the budget formulation and approval process; General Statutes § 7-344; we analyze the budget amendment issue by interpreting the latter. "As a matter of statutory construction, specific statutory provisions are presumed to prevail over more general statutory provisions dealing with the same overall subject matter." (Internal quotation marks omitted.) *State* v. *Andresen*, 256 Conn. 313, 329, 773 A.2d 328 (2001), quoting *State* v. *Torres*, 206 Conn. 346, 359, 538 A.2d 185 (1988).

General Statutes § 7-340 allows for municipalities to establish boards of finance and provides in relevant part that "[a]ll rights and powers conferred and duties and obligations imposed by the general statutes upon boards of finance shall be held to be conferred or imposed upon each board of finance . . . ." Section § 7-344 provides a detailed procedure for boards of finance to follow in making appropriations and laying a tax[6] and, through the operation of § 7-340, imposes that procedure on the borough's board of finance.

---

[6] General Statutes § 7-344 provides: "Not less than two weeks before the annual town meeting, the board shall hold a public hearing, at which itemized estimates of the expenditures of the town for the ensuing fiscal year shall be presented and at which all persons shall be heard in regard to any appropriation which they are desirous that the board should recommend or reject. The board shall, after such public hearing, hold a public meeting at which it shall consider the estimates so presented and any other matters brought to its attention and shall thereupon prepare and cause to be published in a newspaper in such town, if any, otherwise in a newspaper having a substantial circulation in such town, a report in a form prescribed by the Secretary of the Office of Policy and Management containing: (1) An itemized statement of all actual receipts from all sources of such town during its

In short, the budgeting process described by § 7-344 is as follows. A public hearing is held at which "itemized *estimates* of the expenditures of the town" for the coming year are presented and debated by any interested parties. (Emphasis added.) General Statutes § 7-344.

last fiscal year; (2) an itemized statement by classification of all actual expenditures during the same year; (3) an itemized estimate of anticipated revenues during the ensuing fiscal year from each source other than from local property taxes and an estimate of the amount which should be raised by local property taxation for such ensuing fiscal year; (4) an itemized estimate of expenditures of such town for such ensuing fiscal year; and (5) the amount of revenue surplus or deficit of the town at the beginning of the fiscal year for which estimates are being prepared; provided any town which, according to the most recent federal census, has a population of less than five thousand may, by ordinance, waive such publication requirement, in which case the board shall provide for the printing or mimeographing of copies of such report in a number equal to ten per cent of the population of such town according to such federal census, which copies shall be available for distribution five days before the annual budget meeting of such town. The board shall submit such estimate with its recommendations to the annual town meeting next ensuing, and such meeting shall take action upon such estimate and recommendations, and make such specific appropriations as appear advisable, but no appropriation shall be made exceeding in amount that for the same purpose recommended by the board and no appropriation shall be made for any purpose not recommended by the board. Such estimate and recommendations may include, if submitted to a vote by voting machine, questions to indicate whether the budget is too high or too low. The vote on such questions shall be for advisory purposes only, and not binding upon the board. Immediately after the board of assessment appeals has finished its duties and the grand list has been completed, the board of finance shall meet and, with due provision for estimated uncollectible taxes, abatements and corrections, shall lay such tax on such list as shall be sufficient, in addition to the other estimated yearly income of such town and in addition to such revenue surplus, if any, as may be appropriated, not only to pay the expenses of the town for such current year, but also to absorb the revenue deficit of such town, if any, at the beginning of such current year. The board shall prescribe the method by which and the place where all records and books of accounts of the town, or of any department or subdivision thereof, shall be kept. The provisions of this section shall not be construed as preventing a town from making further appropriations upon the recommendation of its board of finance at a special town meeting held after the annual town meeting and prior to the laying of the tax for the current year, and any appropriations made at such special town meeting shall be included in the amount to be raised by the tax laid by the board of finance under the provisions of this section."

Following that public hearing, the board, once it "consider[s] the *estimates* so presented and any other matters brought to its attention," shall prepare and have published in the local newspaper a report in a format directed by the statute. (Emphasis added.) General Statutes § 7-344. That report includes, among other things, "an itemized *estimate* of expenditures of [the] town for [the] ensuing fiscal year . . . ." (Emphasis added.) General Statutes § 7-344. Thereafter, "[t]he board shall submit such *estimate* with its recommendations to the annual town meeting next ensuing" for action thereon. (Emphasis added.) General Statutes § 7-344. If such estimate is submitted "to a vote by voting machine," "[s]uch *estimate* and recommendations may include . . . questions to indicate whether the budget is too high or too low." (Emphasis added.) General Statutes § 7-344. Those questions, if included, are "for advisory purposes only . . . ." General Statutes § 7-344. Once a budget is adopted and a grand list completed, the board of finance meets and lays an appropriate tax on the list. See generally footnote 6.

We discern from the language used by the legislature in § 7-344 its intent that a proposed municipal budget, once assembled by the board of finance via the specified process, be voted on by the electorate as a whole, not through piecemeal approval of its component parts. The legislature's use of the singular "estimate" in the latter part of the statute addressing the voting process, as opposed to its use of the plural "estimates," in the earlier part of the statute describing the budget formulation process, supports this conclusion. We recognize that the legislature's use of a singular term does not always preclude interpretation of that term as a plural; General Statutes § 1-1 (f); however, when both the singular and plural are used within the same statutory provision, the analysis differs. "We cannot assume that the legislature, in enacting a statutory provision that

uses a particular word in the plural and then the same word in the singular, intended for two different words to have the same meaning . . . ." *Lash* v. *Aetna Casualty & Surety Co.*, 236 Conn. 318, 325, 673 A.2d 84 (1996); see also *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 36 n.6, 594 A.2d 977 (1991). We must presume, therefore, that the legislature's use of the singular in referring to "estimate" at the voting stage and its use of the plural in referring to "estimates" at the formulation stage was deliberate and purposeful.

We find further guidance in the maxim "[e]xpressio unius est exclusio alterius. A statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way." (Internal quotation marks omitted.) *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 200, 585 A.2d 96 (1991). "[W]here a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions." 2A J. Sutherland, Statutory Construction (6th Ed. Singer 2000) § 47.23, pp. 304–307.

Here, § 7-344 provides a detailed road map for municipalities to follow in navigating the appropriations process. It mandates at the outset a public hearing at which various departments' budget estimates are presented "and at which *all persons shall be heard in regard to any appropriation which they are desirous that the board should recommend or reject*." (Emphasis added.) General Statutes § 7-344. The statute thus contemplates a particular method by which voters may express their concerns regarding the proposed appropriation to the board of education or to any other department or function. In addition, § 7-344 allows for further public input at the voting stage by specifically authorizing, "for advisory purposes only," supplemental referendum "ques-

tions to indicate whether *the budget* is too high or too low." (Emphasis added.) This portion of the statute plainly describes the inclusion of questions to solicit nonbinding input regarding the budget as a whole, not those that would permit voters to reject specific portions of the budget outright. In drafting § 7-344, the legislature provided comprehensive instructions to municipalities regarding the budgeting process. If it had intended to authorize separate binding referenda on particular portions of the budget, it surely would have said so. We conclude that the budget amendment is invalid because it conflicts with § 7-344.[7]

We also agree with the court's conclusion that the budget amendment is invalid because it upsets the statutory balance of power between local boards of education and local budgeting authorities as explicated by our Supreme Court. "A town board of education is an agency of the state in charge of education in the town; to that end it is granted broad powers by the legislature; and it is beyond control by the town or any of its officers in the exercise of those powers or in the incurring of expense, to be paid by the town, necessitated thereby, except as limitations are found in statutory provisions." *Board of Education* v. *Board of Finance*, 127 Conn. 345, 349, 16 A.2d 601 (1940); see also General Statutes §§ 10-220 (a) (directing boards of education to maintain good schools and to implement educational directives of state) and 10-222 (a) (giving boards of education discretion to expend funds appropriated by municipalities for maintenance of public schools).

---

[7] We note that the trial court, in its determination that the budget amendment was invalid, did not consider the language of § 7-344 to be dispositive and, instead, based its conclusion on the conflict between the amendment and "§ 10-220 and other 'general laws' furthering the statewide interest in education . . . ." Nonetheless, "[w]e may affirm a proper result of the trial court for a different reason." *Biro* v. *Hirsch*, 62 Conn. App. 11, 16 n.7, 771 A.2d 129, cert. denied, 256 Conn. 908, 772 A.2d 601 (2001).

The court in *Board of Finance* summarized the respective powers of a town board of education and a town board of finance as follows. "Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it; where, however, the estimate is for an expenditure for a purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, the town board of finance has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town the board of education has no power to exceed the appropriations made." *Board of Education* v. *Board of Finance*, supra, 127 Conn. 350–51; see also *Board of Education* v. *New Haven*, 237 Conn. 169, 178–79, 676 A.2d 375 (1996); *Waterbury Teachers Assn.* v. *Furlong*, 162 Conn. 390, 398–99, 294 A.2d 546 (1972); *Board of Education* v. *Ellington*, 151 Conn. 1, 8, 193

A.2d 466 (1963); *Fowler* v. *Enfield,* 138 Conn. 521, 531, 86 A.2d 662 (1952).

The court in *Board of Finance* considered that the statutory scheme for appropriations contemplated a give and take between the board of education and the board of finance, guided by their respective interests and expertise; *Board of Education* v. *Board of Finance,* supra, 127 Conn. 352–53; and noted that the statutes governing the appropriations process were "evidently designed to produce a nice balancing of powers between the two boards . . . ." Id., 353. Other cases have noted that "[e]ach board is given broad, important and far-reaching powers. . . . Boards of education are charged with the duty of providing reasonable educational facilities. Boards of finance are charged with the duty of providing the necessary funds and, at the same time, of seeing to it that expenditures for the educational program are kept within reasonable bounds *in view of the over-all financial resources of the town.*" (Emphasis added.) *Fowler* v. *Enfield,* supra, 138 Conn. 532. Further, a "function of a board of finance is . . . to eliminate wasteful or extravagant expenditures by considering the financial aspects of the municipal government *as a whole rather than from the limited viewpoint of any particular department,* whether it is the department in charge of education or of fire prevention or of police protection . . . ." (Emphasis added; internal quotation marks omitted.) *Board of Education* v. *Ellington,* supra, 151 Conn. 7; see also *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 158–59, 160 A. 902 (1932). The board of finance's "control, however, must be exercised reasonably by taking into consideration the duty of the board of education to maintain in the town a program of educational opportunity which meets the requirements of state law; the power of the board of education to exercise a sound and reasonable discretion in car-

rying out its duties; and the town's financial needs and resources." *Board of Education* v. *Ellington,* supra, 9–10.

In this case, the budget amendment upsets the balance between the board of finance and the board of education by allowing the electorate to veto only the education portion of the budget, in effect subjecting it to isolated scrutiny by voters who may or may not be aware of the board of education's statutory mandates or have a broad understanding of the town's financial resources and priorities as a whole, as does the board of finance. As the court stated, the budget amendment permits the voters to do what the board of finance cannot, that is, simply to reject the board of education's budget, "[w]ithout regard for whether the expenditures included in the board's budget are for purposes which the state statutes make it the duty of the board to effectuate, e.g., providing pupil transportation; § 10-220 (a); and special education; § 10-76d; meeting the minimum expenditure requirement of § 10-262, or whether they are for purposes within the board's discretion under state statutes . . . ."

"It is an established principle that local charter powers must yield to the superior power of the state when the two enter a field of statewide concern." *Wallingford* v. *Board of Education,* 152 Conn. 568, 574, 210 A.2d 446 (1965). Here, the borough's budget amendment intrudes into an area of statewide concern, public education, and conflicts with the statutory scheme governing the process whereby boards of education receive the appropriations necessary to fulfill their duties to the state. Therefore, the court's determination that the budget amendment was invalid was proper and, accordingly, its conclusion that the plaintiff was entitled to judgment as a matter of law was correct.

## II

The defendants also claim that the court's rendering of summary judgment in favor of the plaintiff was improper because the membership amendment is authorized by the General Statutes and is not precluded by the common-law doctrine of incompatible offices. We agree.

Pursuant to § 3.18 of the borough's charter, the board of education consists of nine members. The change effected by the membership amendment is that the person elected to be mayor of the borough also is elected by the voters as one of the nine members of the board.

General Statutes § 7-193 (b) provides in relevant part that "[e]very municipality shall have all municipal officers, departments, boards, commissions and agencies which are required by the general statutes or by the charter. . . . All such . . . boards . . . shall be elected, appointed and organized in the manner provided by the general statutes, except as otherwise provided by the charter . . . . Any municipality may, by charter . . . alter the method of election, appointment or organization of any or all of such . . . boards . . . including combining or separating the duties of each, *unless specifically prohibited from making such alteration by the constitution or the general statutes.*" (Emphasis added.)

General Statutes § 9-210, captioned "Incompatible town offices," specifically enumerates several pairings or groupings of municipal offices that cannot be held simultaneously by the same individual.[8] Mayor and

---

[8] General Statutes § 9-210 provides: "No selectman shall hold the office of town clerk, town treasurer or collector of town taxes during the same official year, nor that of judge of probate for the district within which such town is located; no town treasurer shall hold the office of collector of town taxes during the same official year; nor shall any town clerk or selectman be elected a registrar of voters; and no registrar of voters shall hold the office of town clerk. No assessor shall act as a member of the board of assessment appeals. No member of the board of finance of any town shall

board of education member are not included in the list.[9]

In this case, the court, recognizing the intent of the Home Rule Act and the need to construe its provisions expansively so as to favor local authority over municipal affairs; *Norwich* v. *Housing Authority*, 216 Conn. 112, 118, 579 A.2d 50 (1990); concluded that the terms of § 7-193 (b) clearly were broad enough to permit the borough's membership amendment. The court considered that the amendment " 'alter[ed] the method of election' to the board of education, by providing that the person elected as mayor is also elected as a member of the board." The court continued on, however, to apply the common law of incompatible offices and concluded that pursuant to that analysis, the offices of mayor and board of education member were inherently incompatible and the membership amendment therefore was invalid. The defendants argue that it was improper for the court to engage in a common-law analysis because the language of § 7-193 (b) precludes it and § 9-210 provides an exhaustive list of incompatible town offices. The plaintiff claims that § 7-193 was not intended to supplant the common law and that incompatible town offices are not exclusively described by § 9-210. We agree with the defendants.

hold any salaried town office unless otherwise provided by special act. If any registrar of voters is elected to the office of town clerk or selectman and accepts the office, he shall thereupon cease to be a registrar; and, if any town clerk or selectman is elected registrar of voters, the election shall be void; and in either of said cases the selectmen shall forthwith appoint another registrar by a writing signed by them and filed with the town clerk; but the person so appointed shall be a member of the same political party as that to which the person so elected belongs."

[9] General Statutes § 9-185, which governs elections of "municipal officers," includes "members of boards of education" in an enumeration of such officers. Although "a town board of education is an agent of the state when carrying out the educational interests of the state . . . the members of a board of education are still officers of the town." (Citations omitted.) *Cheney* v. *Strasburger*, 168 Conn. 135, 141, 357 A.2d 905 (1975).

Section 7-193 (b) by its plain terms clearly authorizes municipalities to elect and organize local officers and boards as they see fit, absent a specific *constitutional or statutory* prohibition. See *Norwich* v. *Housing Authority*, supra, 216 Conn. 124–25. Conspicuously absent is any reference to the common law or use of a broad limiting phrase such as "unless otherwise prohibited by law." "A cardinal rule of statutory construction is that where the words of a statute are plain and unambiguous the intent of the [drafters] in enacting the statute is to be derived from the words used. . . . Where the court is provided with a clearly written rule, it need look no further for interpretive guidance." (Citations omitted; internal quotation marks omitted.) *Brennan* v. *Fairfield*, 58 Conn. App. 191, 197, 753 A.2d 396 (2000), rev'd on other grounds, 255 Conn. 693, 768 A.2d 433 (2001). The cases cited by the plaintiff in support of the proposition that a common-law analysis still is appropriate in fact all involved instances of statutory or constitutional disqualification, or predated the enactment of § 7-193 (b). See *Murach* v. *Planning & Zoning Commission*, 196 Conn. 192, 491 A.2d 1058 (1985); *Stolberg* v. *Caldwell*, 175 Conn. 586, 402 A.2d 763 (1978), appeal dismissed sub nom. *Stolberg* v. *Davidson*, 454 U.S. 958, 102 S. Ct. 496, 70 L. Ed. 2d 374 (1981) ; *State ex rel. Butera* v. *Lombardi*, 146 Conn. 299, 150 A.2d 309 (1959); *State ex rel. Schenck* v. *Barrett*, 121 Conn. 237, 184 A. 379 (1936).

Furthermore, we must presume that the legislature, in enacting § 7-193 (b), acted in view of existing relevant statutes, in particular § 9-210. "The legislature is presumed to be aware and to have knowledge of all existing statutes and the effect which its own action or nonaction may have on them." *Windham First Taxing District* v. *Windham*, 208 Conn. 543, 554, 546 A.2d 226 (1988); see also *Budkofsky* v. *Commissioner of Motor Vehicles*, 177 Conn. 588, 592, 419 A.2d 333 (1979). If the

legislature had intended to preclude mayors from sitting on boards of education, it would have added that pairing of offices to the list enumerated in § 9-210.

Our Supreme Court has stated on many occasions that "[u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended [a] list to be exclusive." (Internal quotation marks omitted.) *Doucette* v. *Pomes*, 247 Conn. 442, 457, 724 A.2d 481 (1999); see also *Dowling* v. *Slotnik*, 244 Conn. 781, 802–803, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998); *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 40, 664 A.2d 719 (1995); *State* v. *Kish*, 186 Conn. 757, 766, 443 A.2d 1274 (1982); 2A J. Sutherland, supra, § 47.23, pp. 316–17. Although the court in its memorandum of decision presented a compelling common-law analysis demonstrating the inherent incompatibility of the offices of mayor and board of education member, "[c]ourts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for adding them." (Internal quotation marks omitted.) *Brennan* v. *Fairfield*, supra, 58 Conn. App. 197. Therefore, the court's determination that the membership amendment was invalid was improper and, accordingly, its conclusion that the plaintiff was entitled to judgment as a matter of law was incorrect.[10]

[10] The plaintiff also argues that the membership amendment is invalid because it results in the mayor being an ex officio member of the board of education. Citing General Statutes §§ 9-206a and 7-12a, the plaintiff claims that the General Statutes require that members of boards of education be elected and that they do not authorize ex officio memberships for mayors on boards, as they do for first selectmen. We note that it is not clear that the assumption relied on by the parties and the court that the General Statutes require boards of education to be elected is accurate. Section 9-185 provides in relevant part that "[u]nless *otherwise provided by special act or charter* . . . members of boards of education . . . shall be elected . . . ." (Emphasis added.) See also *Cheshire* v. *McKenney*, 182 Conn. 253, 259, 438 A.2d 88 (1980) (local boards of education "are either elected by local constituencies; General Statutes § 9-203; or, pursuant to the town

The judgment is reversed only as to the trial court's determination that the membership amendment is invalid and the case is remanded with direction to render judgment granting the defendants' motion for summary judgment as to that issue. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

charter, are appointed by an elected officer or body of the municipality"). In any event, we agree with the trial court that pursuant to the membership amendment, "[t]he mayor does not serve on the board 'ex officio.' [Rather] [h]e is elected to the board at the same time that he is elected mayor."