******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAVINE, J., dissenting. I respectfully disagree with the majority that Connecticut's current statutory structure prevented the Probate Court from making the findings necessary for Henrry P. B.-P. (Henrry) to petition the federal government to remain in this country. By failing to hold an expedited hearing and timely rule on the petition seeking the removal of Henrry's guardian and appointment of a coguardian, and the petition for special immigrant juvenile findings, as it was permitted to do by statute and its own rules, the Probate Court itself frustrated and undermined the legislative intent of this state's special immigrant juvenile status findings statute, General Statutes § 45a-608n, leading to the dismissal of the petitions. Moreover, by failing to hold an expedited hearing and to rule on the petitions prior to the day Henrry turned eighteen, I believe that the Probate Court abused its discretion and thus violated the rights of the petitioner, Reyna P. A., and Henrry to due process under the fourteenth amendment to the United States constitution[1] and article first, § 10, of the constitution of Connecticut. By failing to invoke its equitable jurisdiction to expedite the proceedings, the Probate Court potentially has caused Henrry and the petitioner irreparable harm by exposing Henrry to possible deportation to his country of nationality where he has been subject to death threats.[2] I therefore would reverse the judgment of dismissal and remand the matter for further proceedings nunc pro tunc.

I agree with the majority's statement of the facts and, if this were a case in which the circumstances and time constraints were not critical factors,[3] I would agree with its reasoning and result. Obviously, no court system can function if its docket is subject to the *unreasonable* whims or desires of litigants. Of course, courts must control their dockets and proceedings but not so rigidly as to deny due process to litigants, and it is unquestionably true that a major reason for the problem in the present case is the fact that the petitions were filed just five weeks before Henrry turned eighteen. I believe that this case falls into that rare category of emergency cases in which a court has a duty to act expeditiously to prevent an injustice and to ensure that the intent of the law is followed.

The relevant statute, § 45a-608n (b), provides: "At any time during the pendency of a petition to remove a parent or other person as guardian under section 45a-609 or 45a-610, or to *appoint a guardian or coguardian* under 45a-616, a party may file a petition requesting the Probate Court to make findings under this section to be used in connection with a petition to the United States Citizenship and Immigration Services for designation of the minor child as having special immigrant

juvenile status under [8 U.S.C. § 1101 (a) (27) (J) (2012)].[4] The Probate Court shall cause notice of the hearing on the petition to be given by first class mail to each person listed in subsection (b) of section 45a-609, and *such hearing may be held at the same time as the hearing on the underlying petition for removal or appointment. If the court grants the petition* to remove the parent or other person as guardian or *appoint a guardian or coguardian,* the court shall make written findings on the following: (1) The age of the minor child; (2) the marital status of the minor child; (3) whether the minor child is dependent upon the court; (4) whether reunification of the minor child with one or both of the minor child's parents is not viable due to any of the grounds set forth in subdivisions (2) to (5), inclusive, of section 45a-610; and (5) *whether it is not in the best interests of the minor child to be returned to the minor child's or parent's country of nationality or last habitual residence.*"[5] (Emphasis added; footnote added.)

I believe that the Probate Court abused its discretion and erred when it denied the petitioner's emergency petition for a special immigrant juvenile status finding on the ground that "the granting of a petition to remove is a prerequisite to making the requested written findings." This requirement is not found in § 45a-608n (b). I am unaware of any support for the court's conclusion.

I am mindful of the well known rules of statutory construction. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Alvarado* v. *Black*, 248 Conn. 409, 414, 728 A.2d 500 (1999). "A cardinal rule of statutory construction is that where the words of a statute are plain and unambiguous the intent of the [drafters] in enacting the statute is to be derived from the words used. . . . Where the court is provided with a clearly written rule, it need look no further for interpretive guidance." (Internal quotation marks omitted.) *Board of Education* v. *Naugatuck*, 70 Conn. App. 358, 376, 800 A.2d 517 (2002), rev'd in part on other grounds, 268 Conn. 295, 299, 843 A.2d 603 (2004). An appellate court is "constrained to read a statute as written . . . and . . . may not read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Citation omitted; internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 494, 778 A.2d 33 (2001). "Furthermore, it is an elementary rule of statutory construction that we must read the legislative scheme as a whole in order to give effect to and harmonize all of the parts. . . . When statutes relate to the same subject matter, they must be read together and specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." (Citation omitted; internal quotation marks omitted.) *Coregis Ins. Co.* v. *Fleet National Bank*, 68 Conn.

App. 716, 720, 793 A.2d 254 (2002).

Section 45a-608n (b) provides that, during the pendency of a petition to appoint a coguardian, "a party may file a petition requesting the Probate Court to make findings under this section to be used in connection with a petition to the United States Citizenship and Immigration Services for designation of the minor child as having special immigrant juvenile status . . . ." Here, the petitioner had filed a petition seeking to have Santos O. R. appointed as a coguardian of Henrry. The petitioner represented that Santos O. R. was her partner, that he lived with her and Henrry and that he was providing support for Henrry. General Statutes § 45a-616 (b) provides in relevant part: "If any minor has a parent . . . who is the sole guardian of the person of the child, the court of probate . . . may, on the application of the parent . . . appoint one or more persons to serve as coguardians of the child. . . ." Had the court appointed Santos O. R. as coguardian, it could have made the requisite findings necessary for the United States Citizenship and Immigration Services as required by § 45a-608n (b).

The Probate Court also erred, in my opinion, when it denied the petitioner and Henrry an expedited hearing on the petition for removal of guardianship/appointment of coguardian for Henrry, and on the request for special immigrant juvenile status findings, despite clear requests by the petitioner to be heard before Henrry's eighteenth birthday. Such a hearing was required to facilitate the commands of § 45a-608n (b). Under the Probate Court rules, the court could have expedited the hearing. Section 8.7 of the Probate Court Rules provides: "(a) A party may waive the party's right to notice of hearing by filing a written waiver of notice." By granting a waiver of notice of a hearing, the Probate Court could have, and should have, held an expedited hearing on the petitions. Instead, it processed the case as it would have any other petition coming before it.

The Probate Court abused its discretion as well and erred when it denied the petitioner's motion for waiver of study by the Department of Children and Families (department), without holding a hearing, when it was abundantly clear that the completion of the study would occur only after Henrry had turned eighteen. General Statutes § 45a-619 directs the court of probate, in any proceeding under §§ 45a-603 to 45a-624 in which the applicant has alleged that the child has been abused or neglected, to request that the Commissioner of the Department of Children and Families (commissioner) investigate and provide a written report to it within ninety days. However, "[i]n any other proceeding under sections 45a-603 to 45a-624, inclusive, the court shall request an investigation and report unless this requirement is waived for cause shown." General Statutes § 45a-619. The present case falls in the category of "any

other proceeding." The petitioner filed a motion for waiver of the department report in which she gave a detailed outline of why the report should be waived. The Probate Court denied the motion for waiver without explanation.

The timing of a Probate Court hearing and a ruling on the petitions was critically important to protect Henrry's rights under § 45a-608n (b). He and his sister had fled Honduras on foot after his father and his grandfather were murdered, and they made the dangerous trip to this county to rejoin his mother. Henrry himself was fleeing the possibility of murder. He and his sister arrived in the United States approximately eight months before the petitions were filed. He was residing with the petitioner and Santos O. R. who were supporting him. Because he was older than twelve years of age, Henrry was able to consent to the appointment of his coguardian and had done so. See General Statutes § 45a-616a (a) (3) (A). A medical examination cleared him to enroll as a student at high school. Was it conceivable that a department report could reveal information indicating that placing Henrry with the petitioner and Santos O. R. was problematical? Yes. Was a report truly necessary given the delay it would cause? Not remotely.

In a case when the eighteenth birthday of a minor child is not imminent, such a report is necessary to ensure that a child is kept in a safe and nurturing environment, particularly if a child is being placed with persons outside his or her family. But, in the present case, when the effect of ordering a report unquestionably undermined the time limitations of the statute, ordering it was an abuse of discretion. In the alternative, the Probate Court could have ordered the report from the commissioner but held the necessary hearing and made the requisite findings, reserving the right to reverse its decision if the commissioner's report did not support the petitions filed by the petitioner.[6]

I also conclude that the Superior Court erred in dismissing the appeals at issue for lack of subject matter jurisdiction. "[A] determination regarding a trial court's subject matter jurisdiction is a question of law, [and therefore] our review is plenary. . . . Moreover, our analysis of the court's jurisdiction in the current case requires us to examine the scope and effect of several statutory schemes." (Citation omitted; internal quotation marks omitted.) *In re Matthew F.*, 297 Conn. 673, 688, 4 A.3d 248 (2010).

General Statutes § 45a-186 (a) provides in relevant part: "[A]ny person aggrieved by any order, denial or decree of a Probate Court in any matter . . . may . . . appeal therefrom to the Superior Court. . . ."

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks dis-

cretion to consider the merits of a case over which it is without jurisdiction . . . . Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Citation omitted; internal quotation marks omitted.) *In re Matthew F.*, supra, 297 Conn. 688–89.

"Although at one time, the Juvenile Court was a separate and independent court, [i]n 1978, the General Assembly enacted General Statutes § 51-164s, which merged the Juvenile Court and the Superior Court in order to maximize the efficiency of scarce judicial resources. Under § 51-164s, [t]he Superior Court shall be the sole court of original jurisdiction for all causes of action, *except such actions over which the courts of probate have original jurisdiction*, as provided by statute." (Emphasis altered; internal quotation marks omitted.) Id., 690.

"As a result of this merger, we have concluded that the issue of juvenile jurisdiction is not a question of subject matter jurisdiction, but rather more a question of venue. . . . While jurisdiction is the power and authority of the court to act, venue is the place where the power to adjudicate is to be exercised, that is, the place where the suit may or should be heard. The requirements of jurisdiction are grounded in the state's inherent judicial power, while the requirements of venue are grounded in convenience to litigants. Venue does not involve a jurisdictional question but rather a procedural one, and thus is a matter that goes to process rather than substantive rights." (Citations omitted; internal quotation marks omitted.) Id., 691.

"[A]n appeal from a probate order or decree to the Superior Court is not a civil cause of action. It has no more the ordinary attributes of a civil action than the original proceedings in the court of probate. . . . [A]ppeals from probate are not civil actions because it has always been held that the Superior Court, while hearing appeals from probate, sits as a court of probate and not as a constitutional court of general or common-law jurisdiction. It tries the questions presented to it de novo, but in so doing it is . . . exercising a special and limited jurisdiction conferred on it by the statute authorizing appeals from probate." (Internal quotation marks omitted.) *In re Probate Appeal of Cadle Co.*, 152 Conn. App. 427, 439, 100 A.3d 30 (2014).

"The function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo. . . . Thereafter, upon consideration of all evidence presented on the appeal which would have been admissible in the [P]robate [C]ourt, the [S]uperior [C]ourt should

exercise the same power of judgment which the [P]robate [C]ourt possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the [P]robate Court." (Internal quotation marks omitted.) Id., 439–40. In the present case, the Superior Court sitting as a court of probate on appeal, should have provided the petitioner and Henrry with a hearing pursuant to § 45a-608n.

Moreover, by failing to hold a hearing on the petitions the Probate Court ignored its equitable power to waive the department report and conduct the hearing. Likewise the Superior Court, sitting as a court of probate, ignored its equitable powers by dismissing the petitioners' appeals. The case of *Killen* v. *Klebanoff*, 140 Conn. 111, 98 A.2d 520 (1953), is instructive. In that case, the plaintiff took an appeal from the Probate Court's finding as to who were the heirs of Susan Sherman. Id., 117. The question on appeal to the Superior Court was whether the finding was correct. Id. Our Supreme Court found that the Superior Court, when acting on the appeal, was itself acting as a court of probate with the same powers. Id. It was sitting as a court of limited statutory jurisdiction, and accordingly, was limited to probate powers. Id., 117–18. Our Supreme Court determined: "While probate courts do not have general equity jurisdiction, they may exercise equitable powers under certain circumstances. However, the equity which the Probate Court administers must grow out of and be inseparably connected with the matter the court is acting upon . . . ." (Internal quotation marks omitted.) Id., 118.

In the present case, the equitable power that the Probate Court and the Superior Court, sitting as a court of probate, could have exercised was inseparably connected to § 45a-608n (b). The Probate Court had roughly five weeks within which to act in this case, yet it failed to do so. It is illogical for the Probate Court to fail to expedite this matter, and then cause the matter ultimately to be dismissed in part due to its own delay. Other courts faced with similar dilemmas have refused to allow the special immigrant juvenile scheme to be undermined. See, e.g., *Recinos* v. *Escobar*, 473 Mass. 734, 46 N.E.3d 60 (2016).

"On appellate review, the ultimate issue is whether, according to recognized principles of equity, abuse of discretion is manifest or an injustice appears to have been done." (Internal quotation marks omitted.) *Kim* v. *Magnotta*, 49 Conn. App. 203, 220, 714 A.2d 38 (1998) (*Lavery, J.*, dissenting), rev'd, 249 Conn. 94, 98, 733 A.2d 809 (1999). "A fundamental maxim of general equity jurisprudence is that equity will not suffer a wrong to be without a remedy." *Recinos* v. *Escobar*, supra, 473 Mass. 741, citing 2 J. Pomeroy, Equity Jurisprudence (5th ed. 1941) § 363, pp. 8–9. In the present case, the petitioner and Henrry have suffered a wrong in that

they were not afforded an opportunity to have the Probate Court hold an expedited hearing on the petitions before Henrry turned eighteen. Equity, therefore, demands that the judgment of dismissal be reversed and the petitions remanded to the Superior Court for a hearing punc pro tunc.[7]

I also conclude that the petitioner and Henrry were denied due process of law when neither the Probate Court nor the Superior Court afforded them a timely hearing on the petitions filed pursuant to § 45a-608n (b), despite the requests made by the petitioner to waive the department report and to expedite the hearing. A fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Mathews* v. *Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "In reviewing a procedural due process claim, we must first determine whether a protected liberty or property interest is involved. If it is, then we must determine the nature and extent of the process due. . . .

"A parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the Fourteenth Amendment. . . . That right, however, is not absolute. The welfare of children is a matter of State concern. . . . Before a parent can be deprived of her right to the custody, care, and control of her child, he or she is entitled to due process of law. . . . A due process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled."[8] (Citation omitted; internal quotation marks omitted.) *In re Tayler F.*, 296 Conn. 524, 553–54, 995 A.2d 611 (2010). In the present case, the petitioner was denied the right of a parent concerning the care, custody, and control of Henrry to protect him from potential deportation to Honduras, where he had received death threats, by having the Probate Court make the findings needed in connection with a petition to the United States Citizenship and Immigration Services.

The Probate Court's failure to hold an expedited hearing to make the factual findings needed for the federal petition also were in violation of our state constitution. Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ." Article first, § 10, of the constitution of Connecticut provides that "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." In this instance, by failing to hold an expedited hearing and make the findings required by § 45a-608n (b), the petitioner and Henrry

were denied the benefit afforded them by the statute. Their interest in the benefit afforded by the statute is, at the very least, a property interest. See *Giaimo* v. *New Haven*, supra, 257 Conn. 499–500.

In conclusion, I believe that the present petitions deserve to be heard on their merits in such a manner as to ensure compliance with the requirements of the special immigrant juvenile scheme, generally, and § 45a-608n specifically. Given the current reality that many children are fleeing their homeland in search of the safety and freedom this country has always provided, the timeline presented in the present case is likely to recur, and recur frequently. If our Supreme Court certifies an appeal from the judgment of this court, I would urge it to use its supervisory authority; see *In re Joseph W.*, 301 Conn. 245, 267–68, 21 A.3d 723 (2011); to incorporate an order that cases with similar time constraints be addressed on an expedited basis so as to ensure possible compliance with § 45a-608n (b).[9]

For the foregoing reasons, I would reverse the judgment of the Superior Court and remand the case to that court with direction to hold a de novo hearing on the petitions nunc pro tunc.

[1] "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth amendment." (Internal quotation marks omitted.) *Mathews* v. *Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The United States Supreme Court "consistently has held that some form of hearing is required before and individual is finally deprived of a property interest." Id., 333. "The fundamental requirement of due process is the opportunity to be heard *at a meaningful time* and in a meaningful manner." (Emphasis added; internal quotation marks omitted.) Id.

[2] Henrry may be deported and sent back to Honduras, where his life has been threatened. *At the same time* the petition for the removal of guardian/ appointment of a coguardian was filed, the petitioner filed a petition for special immigrant juvenile findings. The response to the question if "[i]t is not in the best interests of the minor to be returned to the minor's . . . country of nationality . . . for the following reasons," stated: "The minor child fled the country of Honduras due to death threats and fear of retaliation. The minor child's Father and Paternal Grandfather were both murdered by the same individuals who had also threatened to murder the remainder of the family, including this child. The family was warned that the armed assailants were looking for the child to murder the child, and therefore the children refused to leave the home and stopped attending school. Ultimately this child decided to flee the country in secret with his sibling and be reunited with Mother in the United States. If the child is returned to the home country of Honduras with his sibling, he faces the risk of being murdered by the assailants who have already murdered his Father and Paternal Grandfather and [who] are looking for him at the present. The proposed guardian is currently living with the minor and supporting the Mother with the minor's care." See General Statutes § 45a-608n (b) (5) (court shall make finding "whether it is not in the best interests of the minor child to be returned to the minor child's or parents' country of nationality or last habitual residence").

[3] We now live in a time when facts similar to the ones presented here are likely to arise in our court of probate, and the judges and their clerks should be aware of time constraints. "During the past few years, tens of thousands of minor children have been caught crossing the United States southern border, causing a problematic surge of illegal immigration. More than three-quarters of the children are from three countries: El Salvador, Guatemala and Honduras. A significant portion of them are boys between fifteen and seventeen years of age. Many of these unaccompanied minors have been placed with sponsors, usually parents or relatives, where they remain while

immigration proceedings are being processed by the United States Department of Homeland Security . . . . See H. Park, 'Children at the Border,' The New York Times, Oct. 21, 2014, available at http://www.nytimes.com/interactive/2014/07/15/us/questions-about-the-border-kids.html?_r=0 (last accessed [February 23, 2017])." *In re Pedro J. C.*, 154 Conn. App. 517, 519 and n.1, 105 A.3d 943 (2014).

In reversing and remanding the case in *In re Pedro J. C.*, this court ordered that the remand order "be complied with expeditiously so as to insure that the requisite [special immigration juvenile status] findings can be made before March 1, 2015 [when Pedro J. C. turns eighteen]." Id., 543. This court's decision in *In re Pedro J. C.* was issued in December, 2014, more than a year before the petitions in the present case were filed in the Probate Court.

[4] I note the tension between the definition of *child* under Connecticut's statutory scheme and the relevant federal statute. General Statutes § 45a-604 (4) provides: " 'Minor' or 'minor child' means a person under the age of eighteen . . . ." *Child* under the federal statute is defined as, inter alia, an unmarried person under the age of twenty-one years of age. See 8 U.S.C. § 1101 (b) (1) (2012).

[5] General Statutes § 45a-609 (a) provides: "Upon application for removal of a parent or parents as guardian, the court shall set a time and place for hearing to be held within thirty days of the application, unless the court requests an investigation in accordance with the provisions of section 45a-619. In that case, the court shall set a day for hearing not more than thirty days following receipt of the results of the investigation."

General Statutes § 45a-619 provides in relevant part: "In any proceeding under sections 45a-603 to 45a-624, inclusive, in which the applicant has alleged that the minor has been abused or neglected . . . the Court of Probate shall request the Commissioner of Children and Families . . . to make an investigation and written report to it, within ninety days from the receipt of such request, *unless the request concerns an application for immediate temporary custody* . . . in which case the commissioner shall render the report by such date as is reasonably ordered by the court. . . . *In any other proceeding under sections 45a-603 to 45a-624, inclusive, the court shall request an investigation and report unless this requirement is waived for cause shown. . . .*" (Emphasis added.)

[6] I note that the commissioner's report supporting Henrry's being placed with the petitioner and Santos O. R. was completed after Henrry turned eighteen.

[7] I note the approach taken by the Supreme Judicial Court of Massachusetts was pursuant to the broad grant of equitable authority provided by its legislature. Chapter 215, § 6, of the Massachusetts General Laws provides in relevant part: "The probate and family court department shall have original and concurrent jurisdiction with the supreme judicial court and the superior court department of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction . . . ."

[8] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty or property, without due process of law;* nor deny to any person within its jurisdiction the equal protection of the laws." (Emphasis added.)

[9] I suggest that an alternative resolution of the issues presented in this appeal be dealt with by the General Assembly.