BOARD OF EDUCATION OF THE CITY OF NEW
HAVEN ET AL. *v.* CITY OF NEW
HAVEN ET AL.
(15224)
(15225)

Callahan, Borden, Berdon, Katz and Palmer, Js.

Argued January 12—officially released May 21, 1996

*Martin S. Echter,* deputy corporation counsel, with whom, on the brief, was *Steven G. Mednick,* corporation counsel, for the appellants in Docket No. 15224 (named defendant et al.).

*Markus L. Penzel,* for the appellant in Docket No. 15225 (defendant board of aldermen of the city of New Haven).

*Kimberly A. Mango,* with whom was *Robert J. Cathcart,* for the appellees in both cases (plaintiffs).

BERDON, J. The sole issue raised in this appeal is whether the New Haven board of education has discretion to reallocate funds appropriated to it by the New Haven board of aldermen in its annual capital budget.[1]

---

[1] The trial court was presented with the narrow issue of whether the board of education had discretion to reallocate funds *within a capital*

The plaintiffs, the New Haven board of education and Reginald Mayo, superintendent of schools, brought this action for a declaratory judgment against the defendants,[2] the city of New Haven, the board of aldermen, the board of finance,[3] the mayor, the controller and the capital projects committee, to determine whether the board of aldermen may: (1) unilaterally alter the annual capital budget submitted by the board of education; (2) alter specific items of the annual capital budget submitted by the board of education; and (3) direct the manner in which funds appropriated to the board of education in its capital budget may be expended within any capital project classification.

The trial court concluded that the board of aldermen and the capital projects committee: (1) have the authority to alter the annual capital budget submitted by the board of education; (2) have the authority to alter specific items in the capital budget submitted by the board of education; but (3) do not have the authority to direct the manner in which funds appropriated to the board of education for the ensuing year may be expended within any capital project classification. Essentially, the trial court declared that the city has the authority to alter the capital budget proposed by the board of educa-

_project account._ Because our decision makes clear that the board of education does not have discretion under the capital budget to expend funds, either within or outside of a capital project account, in a manner different from which they were specifically appropriated, and because the legal arguments of the parties subsume this broader issue, we address the broader issue as phrased.

[2] Because the defendants' respective individual duties and responsibilities imposed under the city's charter are not at issue in this appeal, the defendants are at times referred to in a general manner as "the defendants."

[3] Effective July 1, 1993, after this action was commenced, the board of finance of the city of New Haven, consisting of the mayor, the controller, one alderman and six appointed citizens, was abolished by an amendment to the charter of the city of New Haven. The board of aldermen has subsequently assumed the pertinent duties of the board of finance.

tion,[4] but once the capital budget is appropriated for the ensuing year the board of education has discretion over how the funds will be expended within any capital project classification.

The defendants appealed[5] from that portion of the declaratory judgment regarding the board of education's discretion over capital appropriations to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse and direct the trial court to render judgment in favor of the defendants on the issue before us.

The parties set forth the following pertinent facts in a joint stipulation of facts: As was then required by the city's charter,[6] the board of finance was responsible for reviewing the annual operating budget requests for the city's individual departments, including the board of education, and for making recommendations to the board of aldermen with respect to operating appropriations. Similarly, the capital projects committee, established by the city's charter,[7] was responsible for reviewing the annual capital projects budget requests submitted by the city's departments and for making

[4] The plaintiffs do not challenge the conclusion of the trial court that the defendants have the authority to alter the budget for capital projects proposed by the board of education.

[5] Two appeals were taken to the Appellate Court and subsequently transferred to this court. The defendants, the city of New Haven, the board of finance, the mayor, the controller, and the capital projects committee filed one appeal (Docket No. 15224), while the defendant board of aldermen filed a separate appeal (Docket No. 15225). We consolidated the appeals.

[6] See footnote 3.

[7] Section 77 of the New Haven city charter provides: "There shall be a capital projects committee consisting of the controller, president of the board of aldermen, minority leader of the board of aldermen, a member of the board of finance designated by said board, a member of the city plan commission appointed by the mayor, the planning director and three citizen members appointed by the mayor, whose terms shall be for the same period for which the mayor was elected."

recommendations regarding such submissions to the board of finance for the city's capital improvement program, which included projections of capital expenditures for a six year period.[8]

A "capital project" is defined by the city charter as "any physical public betterment or improvement or any preliminary studies and surveys relative thereto; the acquisition of property of a permanent nature; and equipment for any public betterment or improvement when first erected or acquired; major alterations and repairs to existing buildings or structures; and major pieces of equipment." New Haven Charter § 78. The city's capital budget instruction manual further defines capital projects as those which "have a useful life of at least five years," and defines "major equipment" as equipment costing "at least $5,000 per unit."[9]

On March 16, 1988, the board of education submitted its capital project budget request and project descriptions for the 1988–89 fiscal year to the controller for submission to the capital projects committee. Along with its proposed budget, the board of education sub-

[8] Section 79 of the New Haven city charter provides: "The [capital projects] committee shall prepare and submit to the mayor and the board of finance a program of capital projects which programs shall be based on estimates of the costs of such projects as submitted by each department, office or agency annually in the same manner as estimates of other budgetary requirements are prepared. The mayor may submit such capital budget to the board of aldermen."

Under the capital improvement program, as adopted by the board of aldermen, city agencies were to project and prioritize future capital projects expected to occur over a six year period.

[9] In her affidavit, Ellen Kershaw, the director of New Haven's office of legislative services, stated that "[c]apital projects applicable for consideration in the City's Capital Projects Budget were major purchases or improvements which had a useful life of at least five years, cost at least $15,000 and were not customarily funded in the agency's annual operating budget."

We note the inconsistency between the definition of "major equipment" provided in the city's instruction manual and the definition provided in the testimony of Kershaw. This inconsistency, however, has no impact on the issues before us and therefore need not be resolved.

mitted its six year capital improvement program estimates for fiscal years 1988–89 through 1993–94. The capital projects committee amended the board of education's original budget request by revising the particular projects that were to receive funding. The amended capital budget was approved by the board of finance and the revised amounts were appropriated to the board of education by the board of aldermen.

Subsequently, the board of education attempted to expend capital funds on projects that were not included in its annual appropriation. It is those actions that constitute the factual basis for the issues raised in this appeal. Specifically, the board of education requested funds from the "Furniture Replacement" account to purchase new furniture for its central office; funds in that account had been designated to purchase furniture for instructional areas and libraries. Similarly, the board of education requested funds from the "Rolling Stock" account to purchase an automobile for the school superintendent's use; funds in that account had been designated to purchase two vans for the food services department, a delivery truck for stockroom operations, a dump truck and a sidewalk sweeper. The board of education also requested funds from the "Paving and Fencing" account to repair various schools' roofs and to pave a parking lot; funds in that account had been appropriated to implement a six year paving and fencing program to resurface playgrounds and pedestrian walks. Each of those requests was denied by the city's controller.

In discharging its state constitutional mandate to provide free public primary and secondary education;[10] *Horton* v. *Meskill*, 172 Conn. 615, 647, 376 A.2d 359

---

[10] Article eighth, § 1, of the constitution of Connecticut provides: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principal by appropriate legislation."

(1977); the state has delegated the duty to educate a municipality's children to local boards of education. General Statutes § 10-220;[11] see *Fowler* v. *Enfield*, 138 Conn. 521, 532, 86 A.2d 662 (1952). In addition, the state has delegated to the municipalities other duties related to its educational obligation. See General Statutes § 10-241;[12] *New Haven* v. *State Board of Education*, 228 Conn. 699, 705–706, 638 A.2d 589 (1994); *Cheshire* v. *McKenney*, 182 Conn. 253, 258, 438 A.2d 88 (1980)

---

[11] General Statutes § 10-220 (a) provides: "Each local or regional board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district; provided any board of education may secure such opportunities in another school district in accordance with provisions of the general statutes and shall give all the children of the school district as nearly equal advantages as may be practicable; shall have charge of the schools of its respective school district; shall make a continuing study of the need for school facilities and of a long-term school building program and from time to time make recommendations based on such study to the town; shall have the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes and at all times shall insure all such buildings and all capital equipment contained therein against loss in an amount not less than eighty per cent of replacement cost; shall determine the number, age and qualifications of the pupils to be admitted into each school; shall employ and dismiss the teachers of the schools of such district subject to the provisions of sections 10-151 and 10-158a; shall designate the schools which shall be attended by the various children within the school district; shall make such provisions as will enable each child of school age, residing in the district to attend some public day school for the period required by law and provide for the transportation of children wherever transportation is reasonable and desirable, and for such purpose may make contracts covering periods of not more than five years; may arrange with the board of education of an adjacent town for the instruction therein of such children as can attend school in such adjacent town more conveniently; shall cause each child seven years of age and over and under sixteen living in the school district to attend school in accordance with the provisions of section 10-184, and shall perform all acts required of it by the town or necessary to carry into effect the powers and duties imposed by law."

[12] General Statutes § 10-241 provides: "Each school district shall be a body corporate and shall have power to sue and be sued; to purchase, receive, hold and convey real and personal property for school purposes; to build, equip, purchase and rent schoolhouses and make major repairs thereto and to supply them with fuel, furniture and other appendages and accommoda-

("[t]his court has recognized that '[t]he state, in the exercise of its policy to maintain good public schools, has [also] delegated important duties in that field to the towns' ").

Relevant to this case, the legislature has charged the local boards of education with "the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes . . . ." General Statutes § 10-220 (a). On the other hand, the legislature has charged the municipalities with constructing, equipping and renovating their schools, as well as partially financing the education provided.[13] General Statutes § 10-241. Moreover, in this case, the city has delegated some of its statutory duties to the board of education. New Haven Charter § 174.[14]

Traditionally, there has been a tension between local boards of education, which seek sufficient funds to fulfill their educational mission, and municipalities, which are concerned with their overall financial condition. As this court noted in *Baston* v. *Ricci*, 174 Conn. 522, 523, 391 A.2d 161 (1978), there has been a "long-

tions; to establish and maintain schools of different grades; to establish and maintain a school library; to lay taxes and to borrow money for the purposes herein set forth; to make agreements and regulations for the establishing and conducting of schools not inconsistent with the regulations of the town having jurisdiction of the schools in such district; and to employ teachers, in accordance with the provisions of section 10-151, and pay their salaries. When such board appoints a superintendent, such superintendent may, with the approval of such board, employ the teachers."

[13] Accordingly, municipalities are authorized "to lay taxes and to borrow money" for these purposes. General Statutes § 10-241.

[14] Section 174 of New Haven city charter delegates to the board of education "the entire charge, control and management of all the public schools in the city, and of the expenditure of all moneys appropriated for the support and maintenance of the same unless otherwise provided herein, and shall have charge and control of the construction, repair and maintenance of all school buildings, grounds and equipment, and shall possess all other powers and be subject to all other duties of boards of education, school committees, and school visitors in this state, so far as the same are consistent with the provisions of this charter . . . ."

continuing problem of providing local education under a system in which the local boards of education are charged with the duty of maintaining good public elementary and secondary schools (General Statutes § 10-220) but are dependent for the funds necessary to perform this duty upon the appropriation of funds by the municipalities or one of their boards." See also, e.g., *New Haven* v. *State Board of Education,* supra, 228 Conn. 699 (whether town has satisfied its obligation by merely funding statutory minimum expenditure requirement); *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 399–400, 294 A.2d 546 (1972) ("a municipal legislative or finance body may not impede implementation of the statutory obligation of the board of education"); *Board of Education* v. *Ellington,* 151 Conn. 1, 193 A.2d 466 (1963) (board of finance had no discretionary power to refuse to allocate funds that statutorily belonged in board of education's budget); *Fowler* v. *Enfield,* supra, 138 Conn. 521 (board of finance refused to recommend additional appropriation for board of education); *State ex rel. Board of Education* v. *D'Aulisa,* 133 Conn. 414, 52 A.2d 636 (1947) (action for writ of mandamus compelling city's comptroller to certify payment for certain teachers' and superintendents' payroll items); *Board of Education* v. *Board of Finance,* 127 Conn. 345, 16 A.2d 601 (1940) (declaratory judgment action brought by board of education against town of Stamford and board of finance as to respective powers of two boards regarding expenditures for school purposes); *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 160 A. 902 (1932) (board of education is statutorily vested with discretion over matters regarding transportation of students).

We commence our analysis of the issue before us with a review of established principles regarding the fiscal management of an educational district.[15] Pre-

---

[15] Each municipality comprises an educational district. General Statutes § 10-240.

viously this court has recognized that "the financial relationship between the local board of education and the municipal government . . . is complex." *New Haven* v. *State Board of Education*, supra, 228 Conn. 705–706. A board of education's *annual operating budget* is governed by General Statutes § 10-222 (a),[16] which provides that each local board shall submit to the appropriate municipal board a proposed budget "*for the ensuing year*." (Emphasis added.) Nonetheless, a submitted budget need not be adopted as proposed: "Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the

---

[16] General Statutes § 10-222 (a) provides: "Each local board of education shall prepare an itemized estimate of the cost of maintenance of public schools for the ensuing year and shall submit such estimate to the board of finance in each town or city having a board of finance, to the board of selectmen in each town having no board of finance or otherwise to the authority making appropriations for the school district, not later than two months preceding the annual meeting at which appropriations are to be made. The money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education. Any such board may transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of such itemized estimate. Expenditures by the board of education shall not exceed the appropriation made by the municipality, with such money as may be received from other sources for school purposes. If any occasion arises whereby additional funds are needed by such board, the chairman of such board shall notify the board of finance, board of selectmen or appropriating authority, as the case may be, and shall submit a request for additional funds in the same manner as is provided for departments, boards or agencies of the municipality and no additional funds shall be expended unless such supplemental appropriation shall be granted and no supplemental expenditures shall be made in excess of those granted through the appropriating authority. The annual report of the board of education shall, in accordance with section 10-224, include a summary showing (1) the total cost of the maintenance of schools; (2) the amount received from the state and other sources for the maintenance of schools, and (3) the net cost to the municipality of the maintenance of schools."

educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it . . . ." *Board of Education* v. *Board of Finance*, supra, 127 Conn. 350. "To hold otherwise would be tantamount to the giving of a blank check to boards of education to spend the money of the municipality without regard to economy, efficiency or other local needs." *Waterbury Teachers Assn.* v. *Furlong*, supra, 162 Conn. 399. If "the estimate is for an expenditure for a purpose which the statutes make it the duty of the board of education to effectuate or they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, [then] the town . . . has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The [municipality] in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town the board of education has no power to exceed the appropriations made." (Internal quotation marks omitted.) *New Haven* v. *State Board of Education*, supra, 706–707.

Notwithstanding a municipality's discretion with respect to the total annual operating appropriation, § 10-222 (a) provides that the "money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education." In other words, "all appropriations

placed in the [board of education's operating] budget may be expended by the [board] within its discretion." *Board of Education* v. *Ellington*, supra, 151 Conn. 11. Therefore, even if the board of education justifies an appropriation for its annual operating budget based upon an anticipated expenditure for a particular educational purpose, it has the discretion to expend operating funds for an alternative educational purpose.

The plaintiffs argue that the board of education has the same discretion with respect to the annual capital appropriation within any capital project account as it has with respect to its annual operating budget appropriation.[17] We disagree. The plaintiffs fail to appreciate the distinction between the functions that the state has delegated to the board of education under § 10-220 and those that the state has delegated to the municipalities under § 10-241.

"In construing a statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . [W]e are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . ." (Citations omitted; internal quotation marks omitted.) *Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 454–55, 668 A.2d 340 (1995). Although § 10-220 (a) charges boards of education with "the care, maintenance and operation of buildings, lands, apparatus and other property," when that provision is read in conjunction with § 10-241, it is obvious that "maintenance," as used in § 10-220, refers to general maintenance, such as the daily upkeep of school facilities and equipment, the cost of which is provided for in an annual operating budget. Section 10-241, which delegates certain duties to munic-

---

[17] The plaintiffs limit their claim to discretionary reallocation within a capital project classification. Their argument, however, would have equal applicability to reallocations within the capital budget without regard to the limitation of a specific project.

ipalities, however, pertains to capital expenditures, such as the construction and renovation of physical facilities, the purchase of real property, or the purchase of capital equipment.

A local board of education acts as an agent of the state when it performs those duties delegated to it by the state. *Cheshire* v. *McKenney*, supra, 182 Conn. 258. In other words, if a school board is engaged in the provision of primary and secondary education, it is acting under the authority of the state and as the state's agent. Nevertheless, even in performing its duties as an agent of the state, "a local charter may limit the powers of the local board of education where its provisions are not inconsistent with or inimical to the efficient and proper operation of the educational system otherwise entrusted by state law to the local boards." (Internal quotation marks omitted.) Id., 259.

Local boards of education, however, are also agents of the municipalities that they serve. Id., 258. A board of education acts as an agent of its respective municipality when it performs those functions originally entrusted by the state to the municipality that the municipality has subsequently delegated to the board of education; e.g., the construction of schools or the acquisition of capital equipment.[18] While acting as an agent of the municipality, the local boards of education must comply with the municipality's charter, ordinances and established fiscal procedures.

New Haven's charter and ordinances distinguish between operating budgets and capital budgets and contain express provisions governing capital expenses and capital budgets. New Haven Charter §§ 77 through 79; New Haven Code of Ordinances § 2-25. Under the city's ordinances, all decisions relating to capital expenditures are made by the board of aldermen, not the board

---

[18] See footnotes 12 and 14.

of education.[19] Consequently, the board of education is constrained when expending funds that are allocated for capital projects—duties for which the municipality is ultimately responsible pursuant to § 10-241—by the municipality's charter, ordinances and fiscal procedures.

The plaintiffs rely on *Board of Education* v. *Ellington*, supra, 151 Conn. 1, to support their argument that the board of education has the same discretion over capital budget expenditures as it has over operating budget expenditures. In *Ellington*, the board of education and the board of finance "disagreed over their respective powers in the management of funds appropriated by the town for school purposes." Id., 3–4. The town refused the board of education's request for funds to finance the position of curriculum coordinator. Id., 4. In order to prevent the board from diverting other funds to finance that position, appropriations for three new teacher positions and a capital outlay were placed in reserve accounts over which the board of finance had control. This court noted, however, that "[t]he number of teaching positions necessary in the public schools, the need for a curriculum coordinator, and the maintenance of school properties are matters within the sound discretion of the board of education under General Statutes § 10-220." Id., 9. Accordingly, the court held that "[t]he moneys belonged in the [board of education's] budget." Id., 13.

The plaintiffs' reliance on *Ellington* is misplaced. In *Ellington*, there was no indication that either the town's

---

[19] Section 2-25 (f) (2) and (3) of the New Haven code of ordinances provides: "(2) The board of aldermen may increase, reduce or eliminate, in its entirety, any capital project included in the proposed capital project budget, provided that the total of all such changes shall not increase the total amount of the capital budget as transmitted pursuant to subsection (e) above.

"(3) The board of aldermen shall be empowered to amend any narratives or supporting language attached to or contained within the proposed capital budget."

charter or its ordinances provided for separate operating and capital budgets to fund the respective statutory duties of the board of education and the town. Rather, it appears that a single operating budget, which included a capital outlay, was submitted to the board of finance and that all the funds appropriated to the board of education were accounted for under the board of education's annual operating budget. The town never attempted to distinguish operating funds from capital funds, nor did it distinguish between the duties delegated to it and those delegated to the board of education. In fact, the town conceded "that all appropriations placed in the [board of education's] budget may be expended by the [board of education] within its discretion." Id., 11. Under those circumstances, this court held that the funds in question were for educational purposes and therefore should have been allocated to the board of education under its operating budget, over which it had exclusive discretion. Id., 11–12.

We conclude that a local board of education must comply with the charter, ordinances and established procedures of its respective municipality when expending capital funds that have been appropriated to it for the accomplishment of the municipality's statutory educational duties. Consequently, in this case, the board of education does not have the authority to reallocate appropriated capital budget items, regardless of whether the reallocation is within or outside of a project classification.

Our holding in this case is consistent with the overall financial planning that is required for capital expenditures. Fiscal prudence requires long-term planning for these expenditures.[20] In this case, for the fiscal year

---

[20] Additionally, although not directly at issue because the plaintiffs allege that the bond documents involved in this case were general in nature and nowhere is it alleged that their terms would be violated by the plaintiffs' attempted reallocation of funds, capital projects are financed by the sale

1988–89, more than twelve million dollars was appropriated to the board of education for various capital projects. Given the magnitude of the amounts involved, the defendants required six year projections of capital expenditures.[21] To grant a board of education discretion over the reallocation of capital funds could wreak financial chaos on a municipality. For example, a municipality may recognize that the food services department is in need of a van to adequately feed the schoolchildren. Accordingly, the municipality would appropriate funds for such a purchase. Yet, if the board of education had unfettered discretion to reallocate those funds for an alternative purpose, such as the purchase of an automobile for the superintendent's use, the municipality's ability to discharge its duty to acquire a van would be frustrated. If such discretion is allocated to the board of education, a municipality could never be assured that its statutory obligations would be discharged.

In summary, the board of education of the city of New Haven does not have the authority to reallocate funds appropriated to it by the city under its capital budget, unless it receives permission to do so pursuant to the charter and ordinances of the city.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment in favor of the defendants.

In this opinion the other justices concurred.

of bonds and notes whose proceeds are sometimes restricted to a specific purpose. See New Haven Charter § 69.

