BOARD OF EDUCATION OF THE TOWN AND
BOROUGH OF NAUGATUCK *v.* TOWN AND
BOROUGH OF NAUGATUCK ET AL.
(SC 16825)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued September 8, 2003—officially released March 30, 2004

*N. Warren Hess III*, for the appellant (defendants).

*Mark J. Sommaruga*, for the appellee (plaintiff).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Patrice A. McCarthy* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

*Opinion*

PALMER, J. The sole issue presented by this certified appeal is whether an amendment to the town charter of the named defendant, the town and borough of Naugatuck (town),[1] providing for separate voter referenda on the town's education budget and operating budget,

---

[1] Other officials, former officials and a designated legislative body of the town also were named as defendants. They include: the board of mayor and burgesses of the town; William C. Rado and Timothy D. Barth, former mayors of the town; Sophie K. Morton, current town clerk and registrar of vital statistics; Judith E. Crosswait, current borough clerk; and Ann Hildreth and Jane H. Pronovost, former registrars of voters. Further references to the town include the other defendants.

is invalid because it violates General Statutes § 7-344[2] or

[2] General Statutes § 7-344, which delineates certain procedures for the preparation and adoption of a local budget by a board of finance, provides: "Not less than two weeks before the annual town meeting, the board shall hold a public hearing, at which itemized estimates of the expenditures of the town for the ensuing fiscal year shall be presented and at which all persons shall be heard in regard to any appropriation which they are desirous that the board should recommend or reject. The board shall, after such public hearing, hold a public meeting at which it shall consider the estimates so presented and any other matters brought to its attention and shall thereupon prepare and cause to be published in a newspaper in such town, if any, otherwise in a newspaper having a substantial circulation in such town, a report in a form prescribed by the Secretary of the Office of Policy and Management containing: (1) An itemized statement of all actual receipts from all sources of such town during its last fiscal year; (2) an itemized statement by classification of all actual expenditures during the same year; (3) an itemized estimate of anticipated revenues during the ensuing fiscal year from each source other than from local property taxes and an estimate of the amount which should be raised by local property taxation for such ensuing fiscal year; (4) an itemized estimate of expenditures of such town for such ensuing fiscal year; and (5) the amount of revenue surplus or deficit of the town at the beginning of the fiscal year for which estimates are being prepared; provided any town which, according to the most recent federal census, has a population of less than five thousand may, by ordinance, waive such publication requirement, in which case the board shall provide for the printing or mimeographing of copies of such report in a number equal to ten per cent of the population of such town according to such federal census, which copies shall be available for distribution five days before the annual budget meeting of such town. The board shall submit such estimate with its recommendations to the annual town meeting next ensuing, and such meeting shall take action upon such estimate and recommendations, and make such specific appropriations as appear advisable, but no appropriation shall be made exceeding in amount that for the same purpose recommended by the board and no appropriation shall be made for any purpose not recommended by the board. Such estimate and recommendations may include, if submitted to a vote by voting machine, questions to indicate whether the budget is too high or too low. The vote on such questions shall be for advisory purposes only, and not binding upon the board. Immediately after the board of assessment appeals has finished its duties and the grand list has been completed, the board of finance shall meet and, with due provision for estimated uncollectible taxes, abatements and corrections, shall lay such tax on such list as shall be sufficient, in addition to the other estimated yearly income of such town and in addition to such revenue surplus, if any, as may be appropriated, not only to pay the expenses of the town for such current year, but also to absorb the revenue deficit of such town, if any, at the beginning of such current year. The board shall prescribe

because it otherwise is inconsistent with the statutory allocation of power between local boards of education and local budgeting authorities. The trial court struck down the budget amendment,[3] concluding that it impermissibly conflicted with the state's interest in education. The Appellate Court affirmed in part the judgment of the trial court on that ground and on the ground that the budget amendment violates § 7-344. *Board of Education* v. *Naugatuck*, 70 Conn. App. 358, 370, 378, 800 A.2d 517 (2002). We disagree that the budget amendment violates any state statute or policy and, therefore, we reverse in part the judgment of the Appellate Court.[4]

The following stipulated facts and procedural history are necessary to our resolution of this appeal. The plaintiff, the board of education of the town and borough of Naugatuck (board of education), is established and organized under the laws of the state of Connecticut and vested with the authority and responsibility to implement the educational policies of the state in main-

the method by which and the place where all records and books of accounts of the town, or of any department or subdivision thereof, shall be kept. The provisions of this section shall not be construed as preventing a town from making further appropriations upon the recommendation of its board of finance at a special town meeting held after the annual town meeting and prior to the laying of the tax for the current year, and any appropriations made at such special town meeting shall be included in the amount to be raised by the tax laid by the board of finance under the provisions of this section."

[3] We hereinafter refer to the 1996 amendment to the town charter as the budget amendment.

[4] The plaintiff, the board of education of the town and borough of Naugatuck, also challenged an amendment to § 3.18 of the charter, as revised to November 30, 1995, that, among other things, decreased the number of elected board of education members from nine to eight and added the mayor or his designee as a ninth member. The trial court concluded that this amendment was invalid. On appeal, however, the Appellate Court reversed that part of the trial court's judgment invalidating the amendment to § 3.18 of the charter. *Board of Education* v. *Naugatuck*, supra, 70 Conn. App. 374–78. The board of education has not cross appealed from that part of the Appellate Court's judgment and, therefore, we do not address that part of the Appellate Court's judgment.

taining the town's public school system. See General Statutes §§ 9-203 through 9-206 and 10-218 et seq. The town is a consolidated municipality; see General Statutes §§ 7-148 (a) and 7-187 (d); and operates under a town charter (charter), which constitutes the town's organic law. See General Statutes § 7-188 (a).[5] The board of mayor and burgesses is the town's legislative body. The budget making authority of the town resides jointly in the board of mayor and burgesses and the board of finance (joint boards).

Section 12 of the charter, as revised to November 30, 1995, provides in relevant part that "[t]he head of each department, office, commission or agency . . . shall, at least ninety days before the end of the fiscal year, file with the controller . . . a detailed estimate of the expenditures to be made by his department . . . and the revenue, other than tax revenue, to be collected thereby, during the ensuing fiscal year." Section 14 of the charter, as amended by the budget amendment of 1996, provides in relevant part: "Not later than fifteen days before the end of the fiscal year, the board of finance and the board of mayor and burgesses, meeting jointly, shall hold a public hearing on the budget as

---

[5] General Statutes § 7-188 (a) provides: "Any municipality, in addition to such powers as it has under the provisions of the general statutes or any special act, shall have the power to (1) adopt and amend a charter which shall be its organic law and shall supersede any existing charter, including amendments thereto, and all special acts inconsistent with such charter or amendments, which charter or amended charter may include the provisions of any special act concerning the municipality but which shall not otherwise be inconsistent with the Constitution or general statutes, provided nothing in this section shall be construed to provide that any special act relative to any municipality is repealed solely because such special act is not included in the charter or amended charter; (2) amend a home rule ordinance which has been adopted prior to October 1, 1982, which revised home rule ordinance shall not be inconsistent with the Constitution or the general statutes; and (3) repeal any such home rule ordinance by adopting a charter, provided the rights or benefits granted to any individual under any municipal retirement or pension system shall not be diminished or eliminated."

recommended by said boards. . . . Not later than five days following said public hearing, the budget shall be adopted at a joint meeting of the board of finance and the board of mayor and burgesses, and an official copy shall be filed with the controller. . . .

"Within fourteen days of the adoption of the budget, a petition requesting that such budget be put to a vote of the electors may [be] filed with the borough clerk. . . . Any such petition shall specify whether such vote of electors is being sought for the town operating budget or for the board of education budget and shall specify whether such vote is being sought because the level of expenditures in said budgets is too high or too low.

\* \* \*

"Nothing herein shall prohibit the simultaneous circulation of petitions for a vote of the electors on both the town operating budget and board of education budget and if both such petitions are circulated and contain the requisite number of signatures, there shall be two questions presented at the vote of the electors, one on the acceptance or rejection of the town operating budget and one on the acceptance or rejection of the board of education budget. . . ."

Prior to November, 1996, the charter permitted town voters to petition for up to three referenda on the town's entire budget, which included the board of education budget. In November, 1996, by a margin of more than two to one, voters approved an amendment to § 14 of the charter, as revised to November 30, 1995, "allow[ing] up to (3) three separate budget referendums for both the Town Operating Budget and the Board of Education Budget." Thus, under the budget amendment, voters may petition for a vote on the town operating budget or the board of education budget or both. The budget amendment, therefore, effectively establishes the board of education budget as a separate

budget from the rest of the town budget for the purpose of soliciting voter input into the budget approval process. Furthermore, if by referendum voters reject a proposed budget as too high or too low, the revised budget presented at the subsequent public hearing presumably would be adjusted in conformity with the vote. That is, if voters reject a proposed budget as too high, the revised budget presumably would be adjusted downward; conversely, if voters reject a proposed budget as too low, the revised budget presumably would be increased.

The board of education commenced this action seeking, inter alia, a declaratory judgment that the budget amendment violates § 7-344 and several other statutory provisions relating to public education. The town maintained that, under Connecticut's Home Rule Act, General Statutes § 7-187 et seq., it is authorized to submit its education budget to a separate vote of the electorate irrespective of any conflicting provisions in § 7-344. The town also claimed that the budget amendment does not contravene any other state statute or policy relating to education. Ultimately, the parties filed with the trial court a stipulation of facts and cross motions for summary judgment.

In a comprehensive memorandum of decision, the trial court granted the board of education's motion for summary judgment. Although the court rejected the board of education's contention that the bifurcated referenda procedure authorized by the budget amendment violated § 7-344,[6] the court concluded that that proce-

---

[6] In rejecting the board of education's contention that the budget amendment violated § 7-344, the trial court stated: "The [board of education's] statutory argument rests on the statute's use of the singular 'estimate' in describing what is to be submitted to the town budget meeting and to a vote by the electors. . . . Wherever the singular 'estimate' appears in § 7-344, however, it is followed by the plural 'recommendations.' Without some help from legislative history it is not possible to base a conclusion that '[t]he language of this statute clearly contemplates one budget,' as the board [of education] argues, on such inconsistent wording." (Citation omitted.)

dure unreasonably interfered with the board of education's ability to perform its duties pursuant to General Statutes § 10-220 (a)[7] and impermissibly conflicted with other " 'general laws' " furthering the state's interest in education. Specifically, the trial court interpreted the budget amendment as giving voters a veto power over that portion of the budget relating to education, a power that the court concluded is inimical to the board of education's ability to discharge its statutory duties.

On appeal to the Appellate Court, the town claimed that the budget amendment was valid by virtue of the broad powers with which the Home Rule Act vests municipalities. *Board of Education* v. *Naugatuck*, supra, 70 Conn. App. 364–65. The board of education maintained that the trial court correctly had concluded that the budget amendment was invalid and argued, as an alternate ground for affirmance, that the budget amendment nevertheless was invalid because it conflicted with § 7-344. See id., 365–66. The Appellate Court agreed with both of the board of education's claims and affirmed in part[8] the judgment of the trial court.[9] Id., 370, 378.

[7] General Statutes § 10-220 (a) provides in relevant part: "Each local or regional board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district . . . ."

[8] The Appellate Court reversed that part of the trial court's judgment invalidating the amendment to § 3.18 of the charter, which dealt with the issue of the composition of the board of education. See footnote 4 of this opinion.

[9] The Appellate Court dismissed as moot the town's initial appeal from the judgment of the trial court on the ground that the budget amendment and the amendment to § 3.18 of the charter; see footnotes 4 and 8 of this opinion; had been superseded by similar provisions designed to cure certain procedural defects identified by the parties. *Board of Education* v. *Naugatuck*, 58 Conn. App. 632, 638, 641, 755 A.2d 297 (2000). Upon our granting of certification, however, we concluded that the case was not moot and, therefore, reversed the judgment of the Appellate Court dismissing the town's appeal. *Board of Education* v. *Naugatuck*, 257 Conn. 409, 429, 778 A.2d 862 (2001). The present appeal is from the judgment of the Appellate Court following our remand of the case to that court.

The Appellate Court first concluded that the town's budgeting process falls within the purview of § 7-344 and that the budget amendment could not stand because it conflicted with that statutory provision. In determining that § 7-344 governs the town's budgeting process, the Appellate Court reasoned: "Because the statutes cited by the [town] contain broad, general grants of taxing and budgeting powers to municipalities; General Statutes §§ 7-148 (c) (2) (A) and (B),[10] 7-194;[11] but the statute cited by the [board of education] specifically addresses the budget formulation and approval process; General Statutes § 7-344; we analyze the budget amendment issue by interpreting the latter. As a matter of statutory construction, specific statutory provisions are presumed to prevail over more general statutory provisions dealing with the same overall subject matter." (Internal quotation marks omitted.) *Board of Education* v. *Naugatuck*, supra, 70 Conn. App. 366. The Appellate Court further stated, as a basis for its

---

[10] General Statutes § 7-148 (c) provides in relevant part: "Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the Constitution and general statutes . . .

"(2) Finances and appropriations. (A) Establish and maintain a budget system;

"(B) Assess, levy and collect taxes for general or special purposes on all property, subjects or objects which may be lawfully taxed, and regulate the mode of assessment and collection of taxes and assessments not otherwise provided for, including establishment of a procedure for the withholding of approval of building application when taxes or water or sewer rates, charges or assessments imposed by the municipality are delinquent for the property for which an application was made . . . ."

[11] General Statutes § 7-194 provides in relevant part: "Subject to the provisions of section 7-192, all towns, cities or boroughs which have a charter or which adopt or amend a charter under the provisions of . . . chapter [99] shall have the following specific powers in addition to all powers granted to towns, cities and boroughs under the Constitution and general statutes: To manage, regulate and control the finances and property, real and personal, of the town, city or borough and to regulate and provide for the sale, conveyance, transfer and release of town, city or borough property and to provide for the execution of contracts and evidences of indebtedness issued by the town, city or borough."

conclusion that the budget amendment conflicts with § 7-344: "We discern from the language used by the legislature in § 7-344 its intent that a proposed municipal budget, once assembled by the board of finance via the specified process, be voted on by the electorate as a whole, not through piecemeal approval of its component parts. The legislature's use of the singular 'estimate' in the latter part of the statute addressing the voting process, as opposed to its use of the plural 'estimates,' in the earlier part of the statute describing the budget formulation process, supports this conclusion." Id., 368.

The Appellate Court also concluded that the budget amendment was invalid because it impermissibly conflicted with state education policy. See id., 373. The Appellate Court based this conclusion upon its determination that the budget amendment "upsets the balance between the board of finance and the board of education by allowing the electorate to veto only the education portion of the budget, in effect subjecting it to isolated scrutiny by voters who may or may not be aware of the board of education's statutory mandates or have a broad understanding of the town's financial resources and priorities as a whole, as does the board of finance." Id.

We granted the town's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the budget amendment of the [town] was invalid?" *Board of Education* v. *Naugatuck*, 261 Conn. 917, 806 A.2d 1053 (2002). Because we reject both of the reasons advanced by the Appellate Court in support of its conclusion that the budget amendment is invalid, we answer the certified question in the negative.

I

The town first claims that the Appellate Court improperly concluded that the budget amendment vio-

lates § 7-344. The town contends that § 7-344 simply is not applicable when, as in the present case, the town operates under a charter that contains its own provisions concerning the manner in which the town budget is to be formulated and adopted. We agree with the town.

## A

Because the town operates under a charter pursuant to the powers granted to it by the Home Rule Act, we begin our review of the town's claim by explaining the purpose and effect of that act. "The purpose . . . of Connecticut's Home Rule Act is clearly twofold: to relieve the General Assembly of the burdensome task of handling and enacting special legislation of local municipal concern and to enable a municipality to draft and adopt a home rule charter or ordinance which shall constitute the organic law of the city, superseding its existing charter and any inconsistent special acts. . . . The rationale of the act, simply stated, is that issues of local concern are most logically answered locally, pursuant to a home rule charter, exclusive of the provisions of the General Statutes. . . . Moreover, home rule legislation was enacted to enable municipalities to conduct their own business and [to] control their own affairs to the fullest possible extent in their own way . . . upon the principle that the municipality itself kn[ows] better what it want[s] and need[s] than . . . the state at large, and to give that municipality the exclusive privilege and right to enact direct legislation which would carry out and satisfy its wants and needs." (Citations omitted; internal quotation marks omitted.) *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 366–67, 780 A.2d 98 (2001); see also *Norwich* v. *Housing Authority*, 216 Conn. 112, 118, 579 A.2d 50 (1990) (ameliorative provisions of Home Rule Act favoring municipality's exercise of authority over its own affairs must be construed expansively to attain that legislative objec-

tive); *Caulfield* v. *Noble,* 178 Conn. 81, 86–87, 90, 420 A.2d 1160 (1979) (municipalities granted broad authority under Home Rule Act to regulate their own affairs in recognition that municipalities are best suited to address their local needs). Consistent with this purpose, a state statute "cannot deprive cities of the right to legislate on purely local affairs germane to city purposes." *Caulfield* v. *Noble,* supra, 87. Consequently, "a general law, in order to prevail over a conflicting charter provision of a city having a home rule charter, must pertain to those things of general concern to the people of the state . . . ." Id. In addressing the town's claim, therefore, we must determine whether § 7-344 pertains to a matter of statewide concern such that it preempts any conflicting provisions of the charter, in particular, the budget amendment.[12]

As we have indicated, the Appellate Court's conclusion that § 7-344 governs the town's budgeting process was predicated on its determination that, as a matter of statutory construction, the more specific language of § 7-344 predominates over the more general language of those provisions granting towns authority over budgetary matters, namely, § 7-148 (c) (2) (A) and (B) and § 7-194. See footnotes 10 and 11 of this opinion. In framing the question in terms of the relationship between § 7-344, on the one hand, and §§ 7-148 and 7-194, on the other, however, the Appellate Court misperceived the issue raised by the town's claim. Contrary to the analysis employed by the Appellate Court, the issue presented is *not* whether § 7-344 takes precedence over the enabling provisions of §§ 7-148 and 7-194 but, rather, whether § 7-344 predominates over the *provisions of the town charter relating to the budgeting*

---

[12] We note that there is no statutory requirement that a municipality establish a board of finance, and there is no uniform set of procedures to which a municipality must adhere in formulating and adopting its budget if it does not have a board of finance.

*process, including the budget amendment.* That issue, moreover, is not one that can be resolved by resort to general principles of statutory interpretation. As we have explained, its resolution depends, instead, on whether § 7-344 relates to a matter of statewide interest such that it supersedes those charter provisions. If so, then, and only then, must we consider whether the charter provision at issue, that is, the budget amendment, actually conflicts with § 7-344.

### B

We therefore turn to the question of whether § 7-344 relates to a matter of statewide interest or to a matter of purely local concern. We agree with the town that the answer to that question can be found in *Caulfield* v. *Noble*, supra, 178 Conn. 81, and its progeny.

In *Caulfield*, we held that General Statutes (Rev. to 1977) § 7-344 did not preempt a town charter provision that conflicted with that statute's budget setting procedures. Id., 93. Although the dispute in *Caulfield* centered on a different provision of § 7-344 than the dispute in the present case does,[13] essential to our holding in *Caulfield* was the predicate conclusion that matters concerning a town budget are of local rather than statewide concern. Id., 90. We therefore held, on the basis of this predicate conclusion, that general laws pertaining to such matters, such as General Statutes (Rev. to 1977) § 7-344, "do not supersede the provisions of home rule charters or ordinances on the same subject." Id., 91.

We subsequently have reaffirmed our determination in *Caulfield* that, in an area of local concern, such

---

[13] At issue in *Caulfield* was the language of General Statutes (Rev. to 1977) § 7-344 requiring that a general fund surplus in a town budget be applied to reducing the tax rate for the upcoming fiscal year. See *Caulfield* v. *Noble*, supra, 178 Conn. 83. In the present case, the language of General Statutes § 7-344 that permits a town board of finance to submit an annual budget "estimate and recommendations . . . to a vote" is at issue.

as local budgetary policy, general statutory provisions must yield to municipal charter provisions governing the same subject matter. E.g., *Windham Taxpayers Assn.* v. *Board of Selectmen*, 234 Conn. 513, 536, 539, 662 A.2d 1281 (1995); see also *Shelton* v. *Commissioner of Environmental Protection*, 193 Conn. 506, 521, 479 A.2d 208 (1984). Although our analysis in *Caulfield* was limited to the particular provision of General Statutes (Rev. to 1977) § 7-344 at issue in that case; see footnote 13 of this opinion; § 7-344 pertains to budgetary matters only, and such matters, under the Home Rule Act, are the prerogative of this state's towns and municipalities. We therefore see no reason why our conclusion in *Caulfield* is not equally applicable to the other provisions of § 7-344, including the one at issue in the present case.[14]

There can be no dispute, of course, that the education of our schoolchildren is an issue of statewide concern. See, e.g., Conn. Const., art. VIII, § 1;[15] General Statutes § 10-220 (a).[16] It is also true that education is likely to comprise a significant part, if not the largest part, of any municipal budget. But the particular *procedure* pursuant to which a municipality adopts its budget, including the procedure that it employs in adopting the education component of the budget, is not *itself* a matter of statewide concern.[17] As we have stated, "[o]ur

[14] In light of our determination that the provision of § 7-344 at issue in the present case involves a matter of purely local concern and, therefore, that the budget amendment is not preempted, we need not reach the issue of whether § 7-344 actually conflicts with the bifurcated referenda approach authorized under the budget amendment.

[15] Article eighth, § 1, of the constitution of Connecticut provides: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation."

[16] See footnote 7 of this opinion.

[17] This conclusion is not altered by § 7-344, which is concerned solely with the *budgetary process* to be employed by municipalities. Section 7-344 refers only to the budget process *generally* and contains no mention of the education component, or any other component, of local budgets. Thus, § 7-344 does not embody a policy either favoring or disfavoring any particular component of a municipal budget, including education.

constitutional home rule provision . . . prohibits the legislature from encroaching on the local authority to regulate matters of purely local concern, such as the organization of local government or *local budgetary policy.*" (Emphasis added; internal quotation marks omitted.) *Carofano* v. *Bridgeport*, 196 Conn. 623, 630, 495 A.2d 1011 (1985); accord *Shelton* v. *Commissioner of Environmental Protection*, supra, 193 Conn. 521; see also *Windham Taxpayers Assn.* v. *Board of Selectmen*, supra, 234 Conn. 536 (appropriation of town budget is purely local matter because it relates to issues of importance only to town).

Our conclusion that § 7-344 does not serve as a basis for invalidating the budget amendment, however, does not end our inquiry. We still must address the more fundamental issue raised by the town's appeal, namely, whether the budget amendment violates any state statute or policy pertaining to *education*, which unquestionably is an area of statewide concern. We now turn to that issue.

## II

The town claims that the Appellate Court improperly concluded that the budget amendment is invalid because it is inimical to the state's policy favoring education as expressed in our state constitution; see Conn. Const., art. VIII, § 1; various state statutes; see, e.g., General Statutes §§ 10-76d (a) (1),[18] 10-220 (a)[19] and 10-

[18] General Statutes § 10-76d (a) (1) provides in relevant part: "In accordance with the regulations and procedures established by the Commissioner of Education and approved by the State Board of Education, each local or regional board of education shall provide the professional services requisite to identification of school-age children requiring special education . . . prescribe suitable educational programs for eligible children, maintain a record thereof and make such reports as the commissioner may require."

[19] See footnote 7 of this opinion.

222 (a);[20] and decisions interpreting those provisions. We agree with the town that the budget amendment does not violate any state statute or policy favoring education.

We begin our review of the town's claim by summarizing the reasoning employed by the Appellate Court in upholding the trial court's invalidation of the budget amendment as incompatible with the state's interest in education. The Appellate Court commenced its discussion of the issue by underscoring the "statutory balance of power" between local boards of education and local boards of finance; *Board of Education* v. *Naugatuck,* supra, 70 Conn. App. 370; and by explaining the respective powers and responsibilities of those boards in terms first utilized by this court in *Board of Education* v. *Board of Finance,* 127 Conn. 345, 349, 16 A.2d 601 (1940).

"Where a town board of education includes in the estimates it submits to a board of finance expenditures for a purpose which is not within statutory provisions imposing a duty upon it nor within one which vests it with a discretion to be independently exercised, the board of finance may, if in its judgment, considering not only the educational purpose to be served but also the financial condition of the town, it finds that the expenditure is not justified, decline to recommend an appropriation for it; where, however, the estimate is for an expenditure for a purpose which the statutes

---

[20] General Statutes § 10-222 (a) provides in relevant part: "Each local board of education shall prepare an itemized estimate of the cost of maintenance of public schools for the ensuing year and shall submit such estimate to the board of finance in each town or city having a board of finance, to the board of selectmen in each town having no board of finance or otherwise to the authority making appropriations for the school district, not later than two months preceding the annual meeting at which appropriations are to be made. The money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education. . . ."

make it the duty of the board of education to effectuate or [which] they vest in the board of education a discretion to be independently exercised as to the carrying out of some purpose, the town board of finance has not the power to refuse to include any appropriation for it in the budget it submits and can reduce the estimate submitted by the board of education only when that estimate exceeds the amount reasonably necessary for the accomplishment of the purpose, taking into consideration along with the educational needs of the town its financial condition and the other expenditures it must make. The board of finance in such a case must exercise its sound judgment in determining whether or to what extent the estimates of the board of education are larger than the sums reasonably necessary and if it properly exercises its discretion and the budget is approved by the town the board of education has no power to exceed the appropriations made." (Internal quotation marks omitted.) *Board of Education* v. *Naugatuck*, supra, 70 Conn. App. 371, quoting *Board of Education* v. *Board of Finance*, supra, 127 Conn. 350–51.

The Appellate Court further explained that this court, in *Board of Education* v. *Board of Finance*, supra, 127 Conn. 352–53, had recognized "that the statutory scheme for appropriations contemplated a give and take between the board of education and the board of finance, guided by their respective interests and expertise . . . and noted that the statutes governing the appropriations process were evidently designed to produce a nice balancing of powers between the two boards . . . ." (Citation omitted; internal quotation marks omitted.) *Board of Education* v. *Naugatuck*, supra, 70 Conn. App. 372. The Appellate Court continued: "Other cases have noted that [e]ach board is given broad, important and far-reaching powers. . . . Boards of education are charged with the duty of provid-

ing reasonable educational facilities. Boards of finance are charged with the duty of providing the necessary funds and, at the same time, of seeing to it that expenditures for the educational program are kept within reasonable bounds *in view of the over-all financial resources of the town. . . .* Further, a function of a board of finance is . . . to eliminate wasteful or extravagant expenditures by considering the financial aspects of the municipal government *as a whole rather than from the limited viewpoint of any particular department,* whether it is the department in charge of education or of fire prevention or of police protection . . . . The board of finance's control, however, must be exercised reasonably by taking into consideration the duty of the board of education to maintain in the town a program of educational opportunity which meets the requirements of state law; the power of the board of education to exercise a sound and reasonable discretion in carrying out its duties; and the town's financial needs and resources." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 372–73.

The Appellate Court then explained its conclusion that the budget amendment is incompatible with the duties and responsibilities of the board of education. "[T]he budget amendment upsets the balance between the board of finance[21] and the board of education by allowing the electorate to veto only the education portion of the budget, in effect subjecting it to isolated scrutiny by voters who may or may not be aware of the board of education's statutory mandates or have a

---

[21] Although the Appellate Court referred to the town's board of finance, the town's budgeting authority actually belongs to both the board of finance *and* the board of mayor and burgesses. Nevertheless, the fact that the town budgeting authority belongs to both boards and not the board of finance alone has no bearing on the analysis or resolution of the claim before us. Consequently, all references to the board of finance include both boards. As we noted previously, we refer to the board of finance and the board of mayor and burgesses collectively as the joint boards.

broad understanding of the town's financial resources and priorities as a whole, as does the board of finance. As the [trial] court stated, the budget amendment permits the voters to do what the board of finance cannot, that is, simply to reject the board of education's budget, '[w]ithout regard for whether the expenditures included in the board's budget are for purposes which the state statutes make it the duty of the board to effectuate, e.g., providing pupil transportation; [General Statutes] § 10-220 (a); and special education; [General Statutes] § 10-76d; meeting the minimum expenditure requirement of [General Statutes § 10-262j],[22] or whether they are for purposes within the board's discretion under state statutes . . . .' " *Board of Education* v. *Naugatuck*, supra, 70 Conn. App. 373. The Appellate Court therefore concluded that "the . . . budget amendment intrude[d] into an area of statewide concern, [namely] public education, and conflict[ed] with the statutory scheme governing the process [by which] boards of education receive the appropriations necessary to fulfill their duties to the state." Id.

We agree entirely with the Appellate Court's summary of the respective powers of local boards of education and boards of finance. We also agree fully that the powers wielded by a local board of education and a local board of finance also carry certain duties, among them the responsibility that each one exercise its power with due regard for the important role of the other. We disagree with the Appellate Court, however, that the budget amendment conflicts with the various powers and duties of the respective boards.

As we previously noted, under the process authorized by the budget amendment, voters may approve or disapprove either the operating budget or the education bud-

---

[22] General Statutes § 10-262j sets forth guidelines pursuant to which towns are required to make certain minimum expenditures for education.

get or both. If both budgets are approved, both are adopted without further voter input. In the event that one or both of the budgets are rejected as too high or too low, the rejected budget or budgets are adjusted in conformity with the vote and, upon the filing of a petition as prescribed by the charter, a second vote is taken. If, after the second vote, one or both of the budgets again are rejected as too high or too low, then the rejected budget or budgets once again are adjusted in accordance with the vote and, upon the filing of a proper petition, a third and final vote is taken. If, upon the third vote, one or both of the budgets are again rejected, then the rejected budget or budgets are adjusted in accordance with the final vote and adopted by the joint boards without further voter input.

The Appellate Court's determination that this procedure conflicts with our statutory scheme governing the process by which local boards of education "receive the appropriations necessary to fulfill their duties to the state"; id.; necessarily is predicated on the possibility that town voters will reject the education budget as too high one or more times.[23] Because that possibility is a real one, our analysis, like that of the Appellate Court, also is predicated on that scenario.[24]

---

[23] Of course, if town voters were to accept the education budget on the first vote, or if they were to reject the education budget as too *low*, then it hardly could be claimed that such a vote is detrimental to the education budget. In such circumstances, the budget amendment clearly would not be in conflict with state education policy.

[24] We do not *presume*, however, that, under the budget amendment, town voters necessarily will reject one or more proposed education budgets as too high. Because the budget amendment provides an equal opportunity for voters either to approve the education budget or to reject it as too high *or too low*, the budget amendment is neutral on its face. Moreover, we have been provided with no reason why voters are any more likely to reject the education budget as too high than they are to approve it or to reject it as too low. As we have indicated, however, our analysis is based on the worst-case scenario from the standpoint of the board of education, namely, that voters repeatedly will reject the education budget as too high.

Contrary to the determination of the Appellate Court, however, we conclude that the budget amendment does not conflict with state education policy. The primary reason for our conclusion is straightforward: under the very statutes and case law on which the Appellate Court relies, the board of education lawfully cannot recommend, and the joint boards lawfully cannot adopt, an education budget that fails to satisfy state educational mandates or that otherwise fails to address adequately the educational needs of the town's schoolchildren. As we previously have stated, a local board of education has a duty to seek such funding as is reasonably necessary to meet the educational needs of its town's schoolchildren, considering, among other things, state mandates concerning education. See, e.g., *Board of Education* v. *New Haven*, 237 Conn. 169, 175–80, 676 A.2d 375 (1996); *Board of Education* v. *Board of Finance*, supra, 127 Conn. 350–51. Likewise, a local budgeting authority has a duty to provide reasonably sufficient funding for the education of its town's schoolchildren, considering, among other things, the overall financial condition of the town. See, e.g., *Board of Education* v. *New Haven*, supra, 178–79; *Board of Education* v. *Board of Finance*, supra, 350–51. Thus, the state's interest in education cannot be compromised in any way when the board of education and the joint boards discharge their joint responsibility to ensure that *each and every* proposed education budget—including any education budget proposed after one or more such budgets have been rejected by the voters—satisfies state requirements and otherwise is adequate to meet the educational needs of the town's schoolchildren.[25]

---

[25] Because the budget amendment contemplates the possibility of multiple voter referenda on the education budget, we acknowledge that the budget amendment may, to some extent, require enhanced cooperation between the board of education and the joint boards in arriving at an education budget that balances the educational needs of the town's schoolchildren, the will of the voters and the town's overall fiscal condition. That consideration alone, however, does not lead to the conclusion that the budget amendment is invalid. Indeed, we previously have noted that, in general, the

In other words, as long as the board of education and joint boards act in accordance with statutory requirements, *town voters never will have the opportunity to accept or reject an education budget that is insufficiently funded because the board of education is barred from recommending such a budget and the joint boards are barred from adopting such a budget.*

Moreover, the budget amendment does not infringe unduly upon the authority and discretion of the board of education. Indeed, there is nothing in the budget amendment to prevent the board of education from recommending a revised budget that is but a dollar lower than the budget last rejected as too high by voters.[26] On the other hand, the board of education is free

"financial relationship between the local board of education and the municipal government . . . is complex." *New Haven v. State Board of Education,* 228 Conn. 699, 705–706, 638 A.2d 589 (1994). Moreover, we long have recognized that the division of power between local boards of education and local boards of finance has led to frequent clashes between the two boards. *Fowler v. Enfield,* 138 Conn. 521, 532, 86 A.2d 662 (1952). In fact, as we have explained, "[u]ntil there is a clear legislative directive which more explicitly defines the respective authority of the two boards, the clashes are likely to persist." Id. From time to time, those conflicts, when justiciable and not merely political; see *Board of Education v. Board of Finance,* supra, 127 Conn. 353 (suggesting that some conflicts between town's board of finance and board of education are likely to be essentially political in nature and therefore nonjusticiable); will call for a "judicial determination testing the discretion exercised." *Fowler v. Enfield,* supra, 532. Although the budget amendment arguably may complicate further the already complex relationship between the board of education and the joint boards, that mere possibility does not render the budget amendment inconsistent with state education policy.

[26] We note that a proposed education budget likely will contain funding for discretionary items, that is, items that call for funding beyond that necessary to meet minimum state requirements or to provide for a minimally adequate education for the town's schoolchildren. Even if we assume, however, that a proposed education budget were minimally adequate such that any material reduction in that budget would bring it to an unacceptably low level, and the voters nevertheless were to reject that budget as too high, the board of education would be precluded from proposing a revised education budget for voter approval that encompasses reductions that are more than immaterial or de minimis. For the board of education to do otherwise would constitute a violation of the board's statutory obligation to seek funding

to recommend substantial cuts in an education budget that has been rejected as too high by voters if, in the exercise of the board of education's sound judgment, it concludes that such cuts are consistent with its responsibility to ensure that sufficient resources are allocated to the education component of the budget. Thus, although the budget amendment affords voters the opportunity to achieve one or more reductions in the education budget, the magnitude of those reductions is a matter entirely within the discretion of the board of education, subject to appropriate review by the joint boards. As we have explained, if the board of education and the joint boards exercise their respective powers lawfully, any education budget that ultimately is proposed and adopted necessarily will be adequate to meet the educational needs of the town's schoolchildren.

The Appellate Court overlooked this fact in concluding that the budget amendment "upsets the balance" between the board of education and the joint boards because it "permits the voters to do what the [joint boards] cannot, that is, simply to reject the board of education's budget, [w]ithout regard for whether the expenditures included in the [board of education's] budget are for purposes which the state statutes make it the duty of th[at] board to effectuate . . . or whether they are for purposes within the [board of education's] discretion under state statutes . . . ." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *Naugatuck*, supra, 70 Conn. App. 373. As we previously noted, the board of education and the joint boards are required by law to submit for voter approval one or more education budgets that satisfy state mandates and that otherwise satisfy the needs of the town's schoolchildren as those needs reasonably are perceived

sufficient to satisfy state educational mandates and the needs of the town's schoolchildren. See, e.g., *Board of Education* v. *New Haven*, supra, 237 Conn. 175–80; *Board of Education* v. *Board of Finance*, supra, 127 Conn. 350–51.

by the board of education and the joint boards in collaborative cooperation with each other. Thus, as we have explained, town voters never will have an opportunity to approve a proposed education budget that fails to satisfy legal standards.

As our analysis necessarily suggests, we also disagree with the Appellate Court's characterization of the budget amendment as granting voters a veto power over the education budget. It is true that the budget amendment affords more voter input into the budgeting process than that authorized under the preamendment charter provisions. Indeed, the budget amendment affords voters the opportunity to reject as many as three proposed education budgets. The voters' opportunity to forestall the adoption of a budget, however, is not tantamount to a veto power, for even if voters were to reject all three proposed education budgets, the joint boards then would be required to adopt a budget, without further voter input, that complies with state mandates and that reasonably satisfies the needs of the town's schoolchildren. In view of that fact, it simply cannot be said either that the budget amendment gives voters a veto power over the education budget or that the budget amendment is incompatible with the state's interest in education.

The judgment of the Appellate Court is reversed insofar as it upholds the trial court's invalidation of the amendment to § 14 of the town charter providing for separate voter referenda on the town's education budget and operating budget and the case is remanded to the Appellate Court with direction to remand the case to the trial court with direction to render judgment in favor of the town with respect to that issue.

In this opinion the other justices concurred.